Barry BOYD, Appellant,

v.

**PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY,**
Appellee.

Nos. 01–00–00785–CV, 01–03–01146–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 13, 2003.

Keith T. Gilbert, Gilbert & Maxwell, Houston, TX, for Appellant.

Diane M. Guariglia, Allyson L. Mihalick, Beirne, Maynard & Parsons, L.L.P., Mark R. Lapidus, Burck, Lapidus, & Lanza, P.C., Maurice Joseph Meynier, IV, Law Offices of M. Joseph Meynier, IV, Houston, TX, for Appellee.

Panel consists of Justices TAFT, NUCHIA,* and ALCALA.**

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, who was originally assigned to the panel in this appeal, did not participate in this opinion and was replaced by the Honorable Sam Nuchia, Justice, Court of Appeals, First District of Texas at Houston. Justice Nuchia has reviewed the briefs and the record. *See, e.g., F.D.I.C. v. F & A Equip. Leasing*, 854 S.W.2d 681, 683 n. 1 (Tex.App.-Dallas 1993, no writ) (replacing appellate justices during appeal); *K.B. v. N.B.*, 811 S.W.2d 634, 636 n. 1 (Tex.App.-San Antonio 1991, writ denied) (same).

## MEMORANDUM OPINION

TIM TAFT, Justice.

The primary issue in these appeals is whether the trial court erred when it granted a take-nothing summary judgment on the plaintiff's extracontractual causes of action, either because the defendant's summary judgment motion failed to address all of the extracontractual causes of action or because the plaintiff raised material issues of fact on them. Before reaching this primary issue, we set forth the factual and legal background of the dispute and address several related matters. In trial court cause number 689,760 and appellate cause number 01–03–01146–CV,

we affirm the judgment based on the jury verdict. In trial court cause number 689,760–101 and appellate cause number 01–00–00785–CV, we reverse the summary judgment and remand the cause.

## Factual Background

Defendant/appellee, Progressive County Mutual Insurance Company (Progressive), issued a standard Texas personal auto policy to plaintiff/appellant, Barry Boyd, which policy included uninsured/underinsured-motorists (UIM) coverage. There was no collision coverage for Boyd's car. Among other things, the UIM coverage paid for damages that the insured was

** The Honorable Margaret G. Mirabal, former Justice, Court of Appeals, First District of Texas at Houston, who was originally assigned to the panel in this appeal, did not participate in this opinion and was replaced by the Honorable Elsa R. Alcala, Justice, Court of Appeals, First District of Texas at Houston. Justice Alcala has reviewed the briefs and the record. *See, e.g., F & A Equip. Leasing*, 854 S.W.2d at 683 n. 1 (replacing appellate justices during appeal); *K.B.*, 811 S.W.2d at 636 n. 1 (same).

legally entitled to recover from the owner or operator of an "uninsured motor vehicle," the policy definition of which included a "hit-and-run" vehicle, that struck the insured's vehicle and whose owner or operator could not be identified.

Boyd maintained that, at about 5:20 a.m. on March 20, 1997, while driving on a Houston freeway, he was rear-ended by a hit-and-run motorist and his car was pushed into the guardrail. The car was totaled. Boyd made a claim with Progressive for bodily injury and damage to his car under the UIM coverage of his auto policy.

Progressive investigated Boyd's claim. The investigation consisted of two telephone statements and an in-person statement between Boyd and Progressive representatives; a Progressive adjustor's looking at the car; and an examination, by Beryl Gamse, an accident-reconstruction specialist, of the car, the accident site, the police report, and Boyd's in-person statement. Gamse's report concluded that Boyd was not involved in a hit-and-run accident, but, instead, had been involved in a single-vehicle accident.

By letter dated April 23, 1997, after Boyd's statements had been taken and Gamse's report had been received, Progressive denied Boyd's claim for UIM-coverage benefits. The letter stated that Progressive's investigation had revealed that Boyd's claim did not fall within the UIM coverage of his policy. No other reasons or explanation was provided. The letter also said that Boyd would be responsible for his damages, which were his responsibility to mitigate. Gregory Alan Castleman, Progressive's regional claims manager for the area in which the accident occurred, made the final decision to deny Boyd's claim.

After the accident, Boyd's car was taken to a storage lot, where it incurred storage fees of $700. To pay the storage fees, Boyd tendered to the storage lot his car title plus $100.

### The Litigation

In October 1997, seven months after the accident, Boyd filed a lawsuit against Progressive, alleging breach of contract for failure to pay benefits under the insurance policy. About 18 months later, Boyd amended his petition to include extracontractual causes of action for breach of the duty of good faith and fair dealing under the common law and the Uniform Commercial Code, conversion, violation of articles 21.21 and 21.55 (later adding section 21.58) of the Texas Insurance Code, and violation of the Texas Deceptive Trade Practices—Consumer Protection Act (DTPA).[1] *See* TEX. INS.CODE ANN. arts. 21.21, 21.55, 21.58 (Vernon 1981 & Supp. 2004); TEX. BUS. & COM.CODE ANN. §§ 17.46–.63 (Vernon 2002); TEX. BUS. & COM.CODE ANN. §§ 1.101–.208 (Vernon 1994 & Supp. 2004).

Progressive moved to sever the contractual from the extracontractual causes of action and to abate the extracontractual ones. On June 15, 1999, after a response from Boyd and a hearing,[2] the trial court

---

1. The term "bad faith" literally refers to breach of the common-law duty of good faith and fair dealing, but is customarily used more broadly by counsel, commentators, and courts. However, in this opinion, we use the term "extracontractual" for all causes of action other than those for breach of contract, including not only the alleged breach of the common-law duty of good faith and fair dealing, but also all alleged violations of the Texas Insurance Code, all alleged violations of the Texas Deceptive Trade Practices—Consumer Protection Act, and Boyd's claim for conversion.

2. No reporter's record of this or of any other hearing on the severance issue has been filed in this Court.

granted Progressive's motion, severing the extracontractual claims, assigning them trial court cause number 689,760–101, and abating the severed cause until the breach-of-contract claim was concluded. The breach-of-contract claim remained as trial court cause number 689,760. On January 18, 2000, without reference to the June 15, 1999 order, the trial court signed another order ruling that a separate trial would be conducted, after the conclusion of the trial on the breach-of-contract action, on all other extracontractual claims, including conversion. However, discovery would not be abated on the extracontractual causes of action; discovery would continue concurrently in both cases.

In March 2000, Progressive filed a second motion for summary judgment [3] on the extracontractual causes of action and subsequently supplemented that motion. Boyd filed a response, two supplemental responses, special exceptions, objections, amended special exceptions, and amended objections. After a hearing, the trial court granted the motion and signed a judgment on June 13, 2000, notwithstanding its previous order that the extracontractual claims would be tried after the trial on the

breach-of-contract claim. The judgment expressly stated that all causes of action were decided in favor of Progressive, except for the breach-of-contract claim. Also on June 13, 2000, the trial court signed two separate orders: one order sustaining one of Boyd's special exceptions [4] and denying the remainder of them, and the other order sustaining two of Boyd's objections and part of a third objection and overruling the remainder of his objections.

Trial on the breach-of-contract claim was held in September 2000. The jury answered "no" to the following question (question one): "Do you find that there was an accident between an uninsured motor vehicle and Barry Boyd?" [5] On October 12, 2000, the trial court signed a take-nothing judgment in the breach-of-contract case in favor of Progressive, which judgment incorporated the jury's answers to all questions.

## Appeal

Boyd timely filed a notice of appeal after the June 13, 2000 summary judgment and a timely notice of appeal after the October 12, 2000 judgment on the jury verdict.[6]

---

3. According to a docket notation, the trial court denied Progressive's first motion for summary judgment.

4. The trial court sustained Boyd's special exception described in paragraph one. Paragraph one provided: "Plaintiff specially excepts to Progressive's Second Motion for Summary Judgment paragraph IV which refers to a document(s) not contained in Exhibit 'B' attached to Defendant's Second Motion for Summary Judgment." Because this special exception was sustained, there is no reason for the Court to discuss it further. Boyd made the identical complaint in his objections to Progressive's Second Motion for Summary Judgment, and that objection was also sustained.

5. The question contained the following instruction: "You are instructed that an 'uninsured motor vehicle,' means, in this case, a

motor vehicle which is a hit and run vehicle whose operator or owner cannot be identified and which hits a covered auto."

6. Although initially this Court ruled that it would consolidate both appeals under a single appellate cause number (01–00–00785–CV), it has become clear from an administrative standpoint that it is necessary to have a separate appellate cause number for each trial court cause number. Therefore, trial court cause number 689,760 has been assigned appellate cause number 01–03–01146–CV. To this extent, we modify the Court's order of May 17, 2001. The assignment of separate appellate cause numbers does not impact our consideration and disposition of both appeals in a single opinion. Separate judgments, one for each appeal, will issue.

Boyd presents five issues in his appeals: (1) whether the trial court abused its discretion in severing the extracontractual issues from the breach-of-contract issues (his fifth issue); (2) whether the trial court erred in disregarding jury questions six and seven in connection with the judgment in the breach-of-contract case (his fourth issue); and (3) whether the trial court erred in overruling Boyd's amended special exceptions (his first issue) and his objections (his second issue) to Progressive's second motion for summary judgment and in granting summary judgment for Progressive in the case involving his extracontractual claims (his third issue).

### Severance

■ In his fifth issue, Boyd claims that the trial court abused its discretion in severing the extracontractual issues from the contract issues. Boyd argues that the "pretextual (hence 'bad faith') investigation conducted by Progressive is the centerpiece of both the breach of contract and bad faith claims"; therefore, his causes of action are inextricably interwoven. He also asserts, relying on *Liberty National Fire Insurance Co. v. Akin*, 927 S.W.2d 627 (Tex.1996) (orig.proceeding), that when a bad-faith claim, such as his, is not limited to claim denial, severance is improper; therefore, severance of his claims is equivalent to an abuse of discretion. Finally, he asserts that he was prejudiced in presenting only his breach-of-contract case to the jury because he was denied the opportunity to present Progressive's bad-faith actions.

■ Rule of Civil Procedure 41 grants the trial court discretion in the matter of severing causes. TEX.R. CIV. P. 41; *Akin*, 927 S.W.2d at 629; *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990). A trial court's order granting a severance will not be

reversed except for an abuse of discretion. *Guar. Fed. Sav. Bank*, 793 S.W.2d at 658. A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Id.*

The controversy between Boyd and Progressive involves more than one cause of action. Insurance-coverage claims and bad-faith claims are, by their nature, independent. *See Akin*, 927 S.W.2d at 629. Although Boyd's breach-of-contract and bad-faith claims may be interwoven, *Akin* indicates that a severance is required in those bad-faith cases in which the insurer has made a settlement offer on the disputed contract claim. 927 S.W.2d at 630. In his response to Progressive's motion to sever, Boyd conceded that Progressive had tendered settlement offers to him.

In summary, there is nothing in the record before us that suggests that the trial court abused its discretion in severing the extracontractual causes of action from the breach-of-contract cause of action. Accordingly, we overrule Boyd's fifth issue.

### Disregarding Jury's Answers to Render Take-nothing Judgment on Breach-of-Contract Claim

■ In his fourth issue, Boyd raises his only complaint about the take-nothing judgment rendered against him on his breach-of-contract claim. He contends that the trial court erred in disregarding the jury's answers to questions six and seven in entering the take-nothing judgment.

Question six asked what sum of money, if paid then in cash, would fairly and reasonably compensate Boyd for the reasonable steps that he took after loss to protect

his damaged property from further loss. The jury answered "$700.00." Question seven asked the jury to state in dollars and cents the amount, if any, of attorney's fees reasonably and necessarily incurred or to be incurred by Boyd in the lawsuit. The question also enumerated some of the factors that the jury could consider in determining the reasonable value of attorney's fees. The jury answered as follows: (1) for preparation and trial, $20,000.00; (2) for an appeal to the court of appeals, if Progressive appealed the judgment, $15,000.00; and (3) for an appeal to the Supreme Court of Texas, if Progressive appealed the judgment, $10,000.00.

Question one asked the jury whether there had been an accident between an uninsured motorist and Boyd. As stated above, the jury answered that question in the negative. Question two asked whether the negligence of any of the listed parties caused the accident, but the question was predicated upon an affirmative finding to question one. Because the jury answered "no" to question one, the jury did not answer question two. Question three asked for an apportionment of negligence, but was predicated upon an affirmative finding to question two. Because the jury did not answer question two, the jury did not answer question three. Boyd raises no challenge concerning questions one through three or the answers (or lack of answers) thereto.

Questions four through seven were damage issues. None of those questions was predicated on an affirmative finding to question one or two, and the jury answered all of the damage questions.[7] The jury found $0 for past physical pain and mental anguish (question four), $5,000 as the difference in the value of the vehicle immediately before and immediately after the accident (question five), and the dollar amounts quoted above in response to questions six and seven.

Boyd's brief assumes that the trial court disregarded the jury's answers to questions six and seven and entered a judgment notwithstanding the verdict on them. According to Boyd, he specifically pleaded that Progressive had breached Part E[8] of the insurance contract; his unchallenged pleadings supported his claim for the car-storage fees that he asserted; and, he implies, the jury's answer to question six constituted a finding of breach, not only a finding of damage amount. In a similar vein, concerning attorney's fees, Boyd argues that his pleadings supported a claim for attorney's fees and that the jury's answer to question seven constituted a finding of breach, not only a finding of damage amount.

Progressive contends that, based on the jury's negative answer to question one, the trial court correctly disregarded the jury's damage findings as an immaterial issue. Progressive is correct. When the jury has found no liability, a finding of damages is immaterial. *See Turner v. Lone Star Indus., Inc.*, 733 S.W.2d 242, 246 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Zak v. Parks*, 729 S.W.2d 875, 882 (Tex. App.-Houston [14th Dist.] 1987, no writ); *see also Southern Pine Lumber Co. v.*

7. Nor is it mandatory that damage questions contain language predicating them on affirmative findings to liability questions. *See* Tex.R. Civ. P. 277 (indicating that court *may* predicate damage question upon affirmative findings of liability).

8. Part E was entitled, "DUTIES AFTER AN ACCIDENT OR LOSS" and stated in relevant part, under "Additional Duties for Uninsured/Underinsured Motorists Coverage," that the insured should "3. Take reasonable steps after loss, *at our expense,* to protect damaged property from further loss." (Emphasis added.)

*Andrade,* 132 Tex. 372, 124 S.W.2d 334, 335 (1939) (concluding that, when jury found contributory negligence on part of plaintiff, whether jury found plaintiff suffered substantial damages or failed to answer the issue on damages, issue of damages was immaterial). Either the jury's negative finding under question one defeated Progressive's obligation under Part E of the insurance contract to pay for reasonable expenses to protect the covered car or Boyd's failure to submit a jury question on the breach of Part E constitutes a waiver of this ground of recovery under Tex.R. Civ. P. 279.

Accordingly, we overrule Boyd's fourth issue.

### Issues Relating to the Summary Judgment on the Extracontractual Claims

In his first three issues, Boyd asserts that the trial court erred in overruling his special exceptions and objections to, and in granting, Progressive's second motion for summary judgment on his extracontractual claims. We follow the usual standards for reviewing an order granting a motion for summary judgment. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex.1995); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.,* 994 S.W.2d 830, 834 (Tex.App.-Houston [1st Dist.] 1999, no pet.).

*Objection to Supplementation of Clerk's Record*

■ As a preliminary matter, we must rule on Boyd's objection, filed in this Court, to the supplementation of the clerk's record with the deposition of Castleman.[9] Boyd's principal objection is that Castleman's deposition was untimely filed as summary judgment evidence in the trial

court, without leave of court, on the day that Progressive's motion for summary judgment was heard.

First, there is no evidence in the record that Boyd objected to the trial court's consideration of Castleman's deposition. Second, Boyd relied on Castleman's deposition in his supplemental and second supplemental responses to Progressive's second motion for summary judgment, and Boyd incorporated the deposition into his second supplemental response. Accordingly, Boyd's objection to supplementing the clerk's record in this appeal with Castleman's deposition is overruled.

*Special Exceptions or Objections to Progressive's Summary Judgment Evidence*

In support of its motion for summary judgment, Progressive presented Castleman's affidavit and the deposition of its expert, Gamse. Progressive supplemented this evidence with Castleman's deposition, to which were attached, as exhibits, copies of Gamse's report and the telephone and in-person statements that Boyd had given to Progressive representatives. Boyd supported his summary judgment response with copies of the Houston Police Department accident report, his telephone statements, Progressive's supplemental answers to his second set of interrogatories, Progressive's "internal memos," Boyd's affidavit, Progressive's objections and answers to Boyd's interrogatories, Gamse's report, excerpts from Gamse's deposition, and Progressive's letter of April 23, 1997. As we noted above, Boyd's supplemental and second supplemental responses to the summary judgment motion incorporated Castleman's deposition.

Boyd attacks the summary judgment evidence on the following grounds:

---

**9.** By order dated January 25, 2001, this Court ordered Boyd's objection and Progressive's response carried with the case.

- Various documents were not attached to Progressive's second motion for summary judgment (other than those referenced as Exhibit B in Progressive's second motion for summary judgment).
- Although Progressive's summary judgment motion referred to the insurance policy, no copy of that policy was attached to the motion.
- Castleman's affidavit was vague, conclusory, not readily controvertible, and self-serving and relied on hearsay and documents containing specific provisions that were not readily identified.
- The deposition testimony of Gamse was not competent summary judgment evidence and was unreliable and not scientifically well founded under *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557–58 (Tex.1995), and its progeny and contained hearsay; additionally, Progressive did not specify on which pages of the deposition Progressive was relying in support of its summary judgment motion.

We first consider the various documents that Boyd maintains were not attached to Progressive's second motion for summary judgment. We have examined the record, and all of the documents that we have indicated above were presented by the parties in support of their respective summary judgment motion or response. It is also clear from the record that the documents were submitted to the trial court before the summary judgment order was signed and that there was sufficient time for a party to respond to the documents. Accordingly, we cannot conclude that the trial court erred when it denied Boyd's special exceptions on this ground.

■ We next consider the insurance policy. We agree that *Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 680 (Tex.1982), states that, when provisions of an insurance policy are material to a movant's theory, the policy must be attached to the affidavit that asserts the policy's existence or otherwise placed of record to provide a basis for rendition for summary judgment. In *Puga*, the insurance policy was material to the issue of the scope of the earlier Industrial Accident Board award. *Id.* Here, there was no issue that Progressive was the insurer of Boyd, and the insurance policy was not material to Progressive's summary judgment theory on the extra-contractual causes of action. Accordingly, we cannot conclude that the trial court erred when it denied Boyd's special exceptions on this ground.

■ We next consider Boyd's objections to Castleman's affidavit. Castleman's affidavit, based on his "personal knowledge of the facts and statements contained in this affidavit," was one-and-a-half pages long. After the filing of Progressive's summary judgment motion (which included Castleman's affidavit) and Boyd's response, Castleman's deposition was taken. Both parties relied on Castleman's deposition in the summary judgment proceeding. In this appeal, Boyd has made no objection to Castleman's deposition, other than that we should not allow supplementation of the clerk's record with the deposition, which objection we have already overruled. Castleman's deposition contains substantially the same information as set forth in Castleman's affidavit. Therefore, any error by the trial court in considering the affidavit, when the deposition was also before it, was harmless.

■ Finally, we consider Gamse's deposition testimony. Boyd made a global objection to Gamse's 1998 deposition as hearsay. Although Boyd recites in his brief those pages of the deposition containing

his hearsay objections, there is no indication in the record that he requested the trial court to rule on each objection, like the rulings that were made on the objections to Castleman's deposition. Accordingly, Boyd has failed to preserve the hearsay objections on Gamse's deposition for review. *See* Tex.R.App. P. 33.1(a)(2)(A).

■ Boyd also contends that Gamse's opinion testimony was formed without any significant measurements, scientific analysis, or scientific testing and that the testimony was completely subjective and not founded on scientific method. Boyd characterizes Gamse's conclusions as farcical and nonsensical. Boyd argues that Gamse's testimony should be excluded under *Robinson* and its progeny. According to Boyd, these alleged defects preclude Progressive's reliance on Gamse's opinions.

Progressive disputes Boyd's contention about the scientific reliability of Gamse's work, but also points out that Progressive was entitled to rely on the opinion of an independent, objective expert to deny a claim, even if that opinion was later determined to be wrong. *See Lyons v. Millers Cas. Ins. Co.,* 866 S.W.2d 597, 601 (Tex. 1993) (holding that issue of bad faith focuses on reasonableness of insurer's conduct in rejecting claim and holding that there was no evidence that expert reports were not objectively prepared or that insurer's reliance thereon was unreasonable). *Compare State Farm Lloyds v. Nicolau,* 951 S.W.2d 444, 448 (Tex.1997) (holding that insurer's reliance on expert's report, standing alone, will not necessarily shield carrier if there is evidence that report was not objectively prepared or insurer's reliance on report was unreasonable).

■ Boyd's argument seems to be that, in order for Progressive to act in good faith in denying insurance coverage, Gamse's report and his testimony in support of the report must have been reliable

and admissible evidence under Rule of Evidence 702 and *Robinson. See* Tex.R. Evid. 702; *Robinson,* 923 S.W.2d at 557–58. We know of no case so holding. *Lyons* and *Nicolau* instruct that an insurer's conduct in rejecting an insurance claim based on an expert's report may be reasonable, unless the report was not objectively prepared or if the insurer's reliance was unreasonable. *See Nicolau,* 951 S.W.2d at 448; *Lyons,* 866 S.W.2d at 601.

The issue is not the admissibility of Gamse's report and deposition testimony under Rule of Evidence 702, as asserted by Boyd. In fact, the report and supporting deposition testimony had to be considered during the summary judgment proceedings because Progressive's summary judgment motion was based on its reliance on Gamse's report in making its decision to deny coverage. The real issue is whether there were material issues of fact about the report's having been objectively prepared and the reasonableness of Progressive's reliance on the report.

■ Although Boyd claims that Gamse's conclusions about Boyd's falling asleep at the wheel were "subjective," that does not mean that Gamse's report was not "objective." "Objectivity" implies that the expert is independent of the party for whom the report is being prepared, has experience in the area in which he is investigating, and has no predisposition to a specific conclusion. *See, e.g., Nicolau,* 951 S.W.2d at 448–49; *Lyons,* 866 S.W.2d at 599, 601; *Packer v. Travelers Indem. Co.,* 881 S.W.2d 172, 177 (Tex.App.-Houston [1st Dist.] 1994, no writ). There was no evidence that Gamse was not independent. Gamse had worked for McDowell Owens Engineering as a consultant since 1987. Although McDowell and Gamse had worked for Progressive before, they had also worked for other insurance compa-

nies, corporations, and attorneys. Gamse stated that, at the time that he was hired, Progressive representatives did not tell him their opinion of how the accident was caused. Gamse examined Boyd's damaged car, the accident site, the police accident report, Boyd's statements, and the vehicle repair estimate. Gamse had substantial experience in accident reconstruction. Gamse's background did not indicate that he had any predisposition to a particular conclusion about how Boyd's accident was caused.

Boyd did not argue before the trial court, and does not assert in his brief, that there was a material issue of fact about whether Progressive's action in relying on Gamse's report when it denied Boyd's insurance coverage was reasonable. Rather, he expects us to hold that an insurer must first determine if an expert's report is reliable and admissible under *Robinson* before the insurer can reasonably rely on the report in making a coverage decision. This we decline to do.

Having reviewed the record and the law, we conclude that the trial court did not err in failing to exclude Gamse's report and testimony.

### The Merits of the Summary Judgment for Progressive

#### 1. Progressive's summary judgment grounds

Progressive's summary judgment motion was brief, consisting of five pages. The grounds for summary judgment can be summarized as follows:

- For Boyd to recover benefits under the UIM coverage of his insurance policy, he had to prove that he was struck by a hit-and-run driver. For Boyd to recover on his bad-faith claim, he had to prove that Progressive knew or should have known that it was reasonably clear that Boyd's

claim was covered under the policy. *See Universe Life Ins. Co. v. Giles,* 950 S.W.2d 48, 49 (Tex.1997). Put another way, Boyd had to prove that there were no facts before Progressive that, if believed, would have justified denial of his claim. *See State Farm Lloyds v. Polasek,* 847 S.W.2d 279, 284 (Tex.App.-San Antonio 1992, writ denied); *Higginbotham v. State Farm Mut. Auto. Ins. Co.,* 103 F.3d 456, 459 (5th Cir.1997).

- Progressive maintained that it denied Boyd's insurance claim based on "various suspect facts" that it discovered during its investigation and based on the report and investigation of Gamse, an independent, objective expert. *See Lyons,* 866 S.W.2d at 601 (holding that no evidence was offered that expert reports were not objectively prepared or insurer's reliance on them was unreasonable). *Compare Nicolau,* 951 S.W.2d at 448 (holding that mere fact that insurer relies on expert report to deny claim does not automatically foreclose bad-faith recovery and that evidence was presented from which fact finder could have inferred that reports were not objective and that insurer's reliance on reports was merely pretextual). To support its summary judgment motion, Progressive attached Castleman's affidavit and Gamse's deposition.

- Progressive contended that its summary judgment evidence established that it did not deny Boyd's insurance claim until after his statements had been taken, after his car had been inspected, after an independent accident reconstructionist had been retained, after the scene of the accident had been visited, and after Gamse had made his report.

- Progressive acknowledged that Boyd had asserted extracontractual claims

of Texas Insurance Code violations, DTPA violations, breach of the duty of good faith and fair dealing, and "various other common-law tort causes of action." However, Progressive argued that, when extracontractual causes of action did nothing more than recharacterize a plaintiff's bad-faith claim, a defense to the bad-faith claim served to defeat the extracontractual causes of action. *See Escajeda v. Cigna Ins. Co.*, 934 S.W.2d 402 (Tex.App.-Amarillo 1996, no writ); *Emmert v. Progressive County Mut. Ins. Co.*, 882 S.W.2d 32 (Tex.App.-Tyler 1994, writ denied); *Polasek*, 847 S.W.2d 279.

It is important to note that, except as indicated above, Progressive's summary judgment motion did not expressly address the elements of Boyd's causes of action under the Texas Insurance Code, under the DTPA, or for conversion. On appeal, Progressive responds to Boyd's issues relating to summary judgment with the same arguments that Progressive presented below in support of its summary judgment motion, with the exception of the alternative arguments discussed below.

### 2. Boyd's summary judgment response

Boyd answered Progressive's summary judgment motion by simultaneously filing a response, special exceptions, and objections. He subsequently filed two supplemental responses, amended special exceptions, and amended objections. We consider all of these documents to comprise Boyd's response to the summary judgment motion. *See McConnell v.*

*Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993) (holding that issues that nonmovant contends avoid movant's entitlement to summary judgment must be expressly presented by written answer *or other written response* to motion).

Boyd repeats on appeal the innumerable exceptions, objections, and arguments that he raised in the trial court. The two most significant attacks that Boyd makes on the summary judgment motion, and the judgment granted thereon, are that Progressive failed to address all of his causes of action and that he raised material issues of fact.

### 3. Progressive's failure to address all of Boyd's causes of action

■ The general rule is that a court reversibly errs when it grants a motion for summary judgment on a cause of action not addressed in the motion. *Howell v. Hilton Hotels Corp.*, 84 S.W.3d 708, 716 (Tex.App.-Houston [1st Dist.] 2002, pet. denied). Boyd alleged causes of action for breach of the duty of good faith and fair dealing under the common law, violations of article 21.21 of the Texas Insurance Code, violations of the DTPA, violations of articles 21.55 and 21.58 [10] of the Texas Insurance Code, and conversion.

■ Under the duty of good faith and fair dealing, an insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims. *Arnold v. Nat'l County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1987). A party states a cause of action for breach of the duty of good faith and fair dealing

---

**10.** Article 21.58(a) of the Texas Insurance Code provides that, in any suit to recover under a contract of insurance, the insurer has the burden of proof as to any avoidance or affirmative defense that must be affirmatively pleaded under the Texas Rules of Civil Procedure. The article allocates the burden of proof; it does not provide a cause of action. *See, e.g., Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 274 n. 6 (Tex.App.-Houston [1st Dist.] 2001, no pet.) (holding that insurer who relies on exclusion carries burden of proof).

by alleging that there is no reasonable basis for an insurer's denial of a claim, delay in payment, or failure to determine whether there is any reasonable basis for denial or delay. *Id.*

Section three of article 21.21 of the Texas Insurance Code prohibits any person from engaging in any trade practices that are defined as unfair or deceptive acts or practices in the business of insurance. *See* TEX. INS.CODE ANN. art. 21.21, § 3. Section 4(10)(a) defines unfair and deceptive acts in the business of insurance to include the following: (1) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which an insurer's liability has become reasonably clear; (2) failing to provide a policyholder promptly with a reasonable explanation of the basis in the policy in relation to the facts or applicable law for the insurer's denial of a claim; and (3) refusing to pay a claim without conducting a reasonable investigation with respect to the claim. *Id.,* art. 21.21, § 4(10)(a)(ii), (iv), (viii).

Section 17.46 of the DTPA contains a laundry list of 26 unlawful deceptive trade practices. *See* TEX. BUS. & COM.CODE ANN. § 17.46(b). Section 17.50(a)(4) of the DTPA provides that a consumer may bring an action when an act or practice in violation of article 21.21 of the Texas Insurance Code is a producing cause of economic damage. *Id.* § 17.50(a)(4).

Section 3(a) of article 21.55 of the Texas Insurance Code provides, with exceptions that do not appear applicable here, that an insurer must notify a claimant in writing of the acceptance or rejection of a claim not later than the fifteenth business day after the date that the insurer receives all items,

statements, and forms required by the insurer in order to secure final proof of loss. TEX. INS.CODE ANN. art. 21.55, § 3(a). Section 3(c) provides that, if an insurer rejects the claim, the notice required by section 3(a) must state the reasons for the rejection. *Id.* § 3(c).

 Conversion is the unauthorized and wrongful assumption and exercise of control over the personal property of another, to the exclusion of the owner's rights. *Automek, Inc. v. Orandy,* 105 S.W.3d 60, 63 (Tex.App.-Houston [1st Dist.] 2003, no pet.). A claim for conversion requires a plaintiff to show that (1) he owned, had legal possession of, or was entitled to possession of the property; (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights; and (3) the defendant refused the plaintiff's demand for return of the property. *Id.*

 Did Progressive address all of Boyd's extracontractual causes of action? Certainly not expressly or element by element for each cause of action. Although Progressive acknowledged that Boyd had asserted extracontractual causes of action besides bad faith, Progressive argued that all such causes of action were defeated, as a matter of law, because they only recharacterized the bad-faith claim and that a defense to the bad-faith claim defeated all of the extracontractual causes of action.[11]

Assuming that Progressive's argument is generally a correct statement of the law, that argument cannot apply to the extracontractual causes of action for conversion or for violation of sections 3(a) and 3(c) of

---

**11.** As noted above, Progressive relied on *Escajeda v. Cigna Ins. Co.,* 934 S.W.2d 402 (Tex. App.-Amarillo 1996, no writ), *Emmert v. Progressive County Mut. Ins. Co.,* 882 S.W.2d 32 (Tex.App.-Tyler 1994, writ denied), and *State Farm Lloyds v. Polasek,* 847 S.W.2d 279 (Tex. App.-San Antonio 1992, writ denied), to support this proposition.

article 21.55 of the Texas Insurance Code, which claims are not recharacterizations of the bad-faith claim. The elements of conversion—unlawful and unauthorized control over the property of another to his exclusion and a refusal to return the other's property in response to a demand—as they apply to the storage of Boyd's car, do not include a bad-faith element. The requirements of sections 3(a) and 3(c) of article 21.55—that an insurer notify the insured of a claim denial within 15 days after receipt of the documentation of proof of loss and that a claim denial must state the reasons for the denial—are not recharacterizations of the bad-faith claim.

We conclude that, to be entitled to summary judgment on all of Boyd's extracontractual claims, Progressive was obligated to address all of Boyd's extracontractual claims in its second motion for summary judgment and that it did not do so with respect to conversion and violation of article 21.55 of the Texas Insurance Code. Accordingly, the trial court erred when it granted summary judgment in favor of Progressive on Boyd's causes of action for conversion and violation of article 21.55 of the Texas Insurance Code. To this extent, we sustain, in part, Boyd's first through third issues.

For the reasons discussed below, it is unnecessary for us to decide whether or not Progressive successfully addressed Boyd's causes of action for violations of the DTPA and article 21.21 of the Texas Insurance Code as recharacterizations of his bad-faith claim under the common law or whether such causes of action were defeated as a matter of law under *Escajeda v. Cigna Insurance Co., Emmert v. Progressive County Mutual Insurance Co.,* and *State Farm Lloyds v. Polasek.*

**4. Genuine issues of material fact on the remaining extracontractual claims**

 A bona fide coverage dispute between insurer and insured does not, standing alone, demonstrate bad faith. *See State Farm Fire & Cas. Co. v. Simmons,* 963 S.W.2d 42, 44 (Tex.1998); *Nicolau,* 951 S.W.2d at 448; *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994); *see also Giles,* 950 S.W.2d at 54 (stating that standard for recovery must balance remedial purposes of bad-faith tort against insurer's right to deny invalid or questionable claims); *Lyons,* 866 S.W.2d at 600 (holding that, as long as insurer has reasonable basis to deny or to delay payment of claim, there is no bad-faith tort liability). Evidence of the insurer's investigation, including the preparation of an objective, expert report, may demonstrate the existence of a reasonable basis for denying a claim. *See Lyons,* 866 S.W.2d at 601. However, the mere fact that an insurer relies on an expert's report will not shield the insurer if there is evidence that the insurer's reliance was "merely pretextual." *See Nicolau,* 951 S.W.2d at 448.

 Boyd argues that whether an insurer has breached its duty of good faith and fair dealing is a question of fact for the jury, not a matter of law for the court. *See Simmons,* 963 S.W.2d at 44; *Giles,* 950 S.W.2d at 49. This is true, provided that the evidence is legally sufficient to raise a fact issue for the jury or is legally sufficient to support the jury's finding. *See Simmons,* 963 S.W.2d at 44.

 Boyd alleged the following facts to support his causes of action:

● Progressive admitted or confessed that it anticipated litigation on March 20, 1997,[12] the date of the accident.

---

**12.** This date is taken from Progressive's supplemental answers to Boyd's second set of interrogatories. Progressive's corporate representative was asked to state the exact date

- Progressive failed to conduct any meaningful investigation before it anticipated litigation, and its subsequent investigation was not conducted in good faith.
- Progressive did not have an adjustor look at the car until March 25, 1997, five days after Progressive decided to deny Boyd's claim.
- Progressive did not consider employing an accident reconstructionist until April 10, 1997, 20 days after it had determined to deny Boyd's claim.
- Progressive did not send Boyd a letter denying his claim until April 23, 1997, more than 30 days after Progressive had decided to deny his claim, and the letter violated article 21.21 of the Texas Insurance Code.
- The tone of the recorded statements between Boyd and Progressive's representatives was accusatory, leading, and not reasonably conducted and thus demonstrated the prosecutorial practice of Progressive to search for any pretext to deny his claim, rather than to conduct a good-faith investigation of that claim.

With the exception of the last fact alleged, all of Boyd's facts in support of his bad-faith causes of action are based on the statement in Progressive's supplemental answers to Boyd's second set of interrogatories that March 20, 1997 (the date of Boyd's accident) was the exact date that Progressive determined that the investigation made the basis of the lawsuit was conducted in anticipation of litigation. Boyd contends that Progressive could not have conducted its investigation or relied on Gamse's report in good faith if Progressive had determined on March 20 that its investigation was being done in anticipation of litigation.

In his deposition, Castleman testified that, before he had reviewed the file in the case or authorized the denial of Boyd's claim, Gamse was hired to do an accident reconstruction. Progressive had used Gamse in previous cases, and Castleman stated that he had talked to his litigation department about the use of Gamse in the past. Castleman stated that the Progressive claims representatives had not drawn a conclusion about whether Boyd's claim should be denied at the time that Gamse was hired. However, Castleman did not listen to the statements that Boyd gave or read the transcriptions before he authorized the denial of Boyd's claim. Castleman spoke with the representative of Progressive who took the in-person statement and relied on that person's conclusion that Boyd had contradicted himself.

Boyd's contradictions were said to include the following:

- Boyd stated in his telephone statements the day of the accident, shortly after it happened, that the accident had happened at the intersection of highways 45 and 288. These highways do not intersect, and the police report indicated that the accident had occurred in the 4500 block of 288.
- Boyd stated in his telephone statements that he had no idea who the other driver was and did not even know if it was a male driver. He said that the other car just kept on going. In his in-person statement on April 7, 1997, he said that the other driver was a "fella" and that the other driver stopped, got out of his car, got back in his car, and then left.

that Progressive determined that the investigation made the basis of the suit was conducted in anticipation of litigation. She responded, "March 20, 1997," which was the date of Boyd's accident.

● During the in-person statement, Boyd said that he couldn't tell what kind of car was being driven by the other driver because he was dazed. However, toward the end of the interview, he stated that his recollection was that the other car was dark colored, but then said that it was dark outside and that he couldn't remember.

Castleman agreed in his deposition that the April 23, 1997 denial letter never advised Boyd that there were contradictions in his claim information or that the physical evidence of damage to his car was contrary to his statements. Castleman stated that he did not know why Progressive representatives anticipated litigation on March 20, 1997.

Because Progressive's interrogatory answer indicated that Progressive anticipated litigation on the date of Boyd's accident, because Castleman testified that he did not listen to or read Boyd's statements before he authorized denying Boyd's claim, and because apparent inconsistencies between Boyd's telephone statements and in-person statement may have been the result of a dazed or disoriented state at the time of the accident, shortly after which the telephone statements were made, we conclude that there were material issues of fact concerning whether Progressive conducted its investigation in good faith and relied on Gamse's report in denying Boyd's claim. Therefore, the trial court erred when it granted summary judgment in favor of Progressive on Boyd's causes of action for breach of the duty of good faith and fair dealing under the common law and violations of the DTPA and article 21.21 of the Texas Insurance Code. To this extent, we sustain, in part, Boyd's first through third issues.

### 5. Progressive's alternative grounds for affirmance of the summary judgment

▇▇ Progressive has raised on appeal two alternative grounds for affirming the summary judgment. The first ground is that the summary judgment rendered on the extracontractual claims may be affirmed because Boyd did not appeal the judgment on the breach-of-contract claim.[13] According to Progressive, if there has been no breach of the insurance contract based on the allegedly wrongful denial of a claim, there can be no bad-faith or extracontractual liability based upon the same denial as a matter of law. The second ground is that the conversion claim may be affirmed because Boyd reasserted conversion in his trial pleadings and put on evidence in support, but failed to submit conversion to the jury, thereby abandoning the claim.

▇▇ We are unable to affirm the summary judgment on the extracontractual claims based on the subsequent take-nothing judgment in the breach-of-contract case because this ground was not before the trial court. *See Stiles v. Resolution Trust Corp.,* 867 S.W.2d 24, 26 (Tex.1993) (holding that appellate court cannot affirm summary judgment on grounds not raised in trial court). Nor does "no breach of contract" necessarily mandate a conclusion of "no bad faith." *See Am. Motorists Ins. Co. v. Fodge,* 63 S.W.3d 801, 804 (Tex. 2001); *Akin,* 927 S.W.2d at 629; *Republic Ins. Co. v. Stoker,* 903 S.W.2d 338, 341 (Tex.1995).

Neither can we conclude that the judgment in the contract case disposed of the conversion claim. Before the trial began, the conversion claim had already been disposed of by the June 13, 2000 summary

---

**13.** Boyd sought reversal on appeal of the judgment on the breach-of-contract claim based on issues four and five, which this Court has overruled.

judgment, which was final, the trial court's plenary jurisdiction over the June 13 judgment having expired before the trial began.

Accordingly, we reject Progressive's alternative grounds for affirmance.

## Conclusion

We overrule Boyd's objection to the supplementation of the clerk's record with Castleman's deposition.

Because we have concluded that the trial court did not abuse its discretion in severing the extracontractual causes of action from those for breach of contract and that the court did not err in disregarding the jury's answers to questions six and seven, we affirm the take-nothing judgment on the contract cause of action in favor of Progressive in trial court cause number 689,760, which judgment was signed on October 12, 2000 (appellate cause number 01–03–01146–CV).

However, we conclude that Progressive's summary judgment motion did not address all of Boyd's remaining causes of action and that there existed genuine issues of material fact with respect to some of the extracontractual causes of action at the time that the summary judgment was granted. Therefore, we reverse the summary judgment signed on June 13, 2000 in favor of Progressive on all extracontractual causes of action in trial court cause number 689,760–101 (appellate cause number 01–00–00785–CV) and remand this cause for further proceedings.