Opinion issued November 13, 2003













In The
Court of Appeals
For The
First District of Texas




NO. 01-00-00785-CV
NO. 01-03-01146-CV




BARRY BOYD, Appellant

V.

PROGRESSIVE COUNTY MUTUAL INSURANCE COMPANY, Appellee




On Appeal from County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause Nos. 689,760-101 & 689,760




MEMORANDUM OPINION
          The primary issue in these appeals is whether the trial court erred when it
granted a take-nothing summary judgment on the plaintiff’s extracontractual causes
of action, either because the defendant’s summary judgment motion failed to address
all of the extracontractual causes of action or because the plaintiff raised material
issues of fact on them. Before reaching this primary issue, we set forth the factual
and legal background of the dispute and address several related matters. In trial court
cause number 689,760 and appellate cause number 01-03-01146-CV, we affirm the
judgment based on the jury verdict. In trial court cause number 689,760-101 and
appellate cause number 01-00-00785-CV, we reverse the summary judgment and
remand the cause.
Factual Background
          Defendant/appellee, Progressive County Mutual Insurance Company
(Progressive), issued a standard Texas personal auto policy to plaintiff/appellant,
Barry Boyd, which policy included uninsured/underinsured-motorists (UIM)
coverage. There was no collision coverage for Boyd’s car. Among other things, the
UIM coverage paid for damages that the insured was legally entitled to recover from
the owner or operator of an “uninsured motor vehicle,” the policy definition of which
included a “hit-and-run” vehicle, that struck the insured’s vehicle and whose owner
or operator could not be identified.
          Boyd maintained that, at about 5:20 a.m. on March 20, 1997, while driving on
a Houston freeway, he was rear-ended by a hit-and-run motorist and his car was
pushed into the guardrail. The car was totaled. Boyd made a claim with Progressive
for bodily injury and damage to his car under the UIM coverage of his auto policy. 
          Progressive investigated Boyd’s claim. The investigation consisted of two
telephone statements and an in-person statement between Boyd and Progressive
representatives; a Progressive adjustor’s looking at the car; and an examination, by
Beryl Gamse, an accident-reconstruction specialist, of the car, the accident site, the
police report, and Boyd’s in-person statement. Gamse’s report concluded that Boyd
was not involved in a hit-and-run accident, but, instead, had been involved in a
single-vehicle accident.
          By letter dated April 23, 1997, after Boyd’s statements had been taken and
Gamse’s report had been received, Progressive denied Boyd’s claim for UIM-coverage benefits. The letter stated that Progressive’s investigation had revealed that
Boyd’s claim did not fall within the UIM coverage of his policy. No other reasons
or explanation was provided. The letter also said that Boyd would be responsible for
his damages, which were his responsibility to mitigate. Gregory Alan Castleman,
Progressive’s regional claims manager for the area in which the accident occurred,
made the final decision to deny Boyd’s claim.
          After the accident, Boyd’s car was taken to a storage lot, where it incurred
storage fees of $700. To pay the storage fees, Boyd tendered to the storage lot his car
title plus $100.
The Litigation
          In October 1997, seven months after the accident, Boyd filed a lawsuit against
Progressive, alleging breach of contract for failure to pay benefits under the insurance
policy. About 18 months later, Boyd amended his petition to include extracontractual
causes of action for breach of the duty of good faith and fair dealing under the
common law and the Uniform Commercial Code, conversion, violation of articles
21.21 and 21.55 (later adding section 21.58) of the Texas Insurance Code, and
violation of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA).


 
See Tex. Ins. Code Ann. arts. 21.21, 21.55, 21.58 (Vernon 1981 & Supp. 2004);
Tex. Bus. & Com. Code Ann. §§ 17.46-.63 (Vernon 2002); Tex. Bus. & Com. Code
Ann. §§ 1.101-.208 (Vernon 1994 & Supp. 2004).
 
          Progressive moved to sever the contractual from the extracontractual causes of
action and to abate the extracontractual ones. On June 15, 1999, after a response
from Boyd and a hearing,


 the trial court granted Progressive’s motion, severing the
extracontractual claims, assigning them trial court cause number 689,760-101, and
abating the severed cause until the breach-of-contract claim was concluded. The
breach-of-contract claim remained as trial court cause number 689,760. On January
18, 2000, without reference to the June 15, 1999 order, the trial court signed another
order ruling that a separate trial would be conducted, after the conclusion of the trial
on the breach-of-contract action, on all other extracontractual claims, including
conversion. However, discovery would not be abated on the extracontractual causes
of action; discovery would continue concurrently in both cases.
          In March 2000, Progressive filed a second motion for summary judgment


 on
the extracontractual causes of action and subsequently supplemented that motion. 
Boyd filed a response, two supplemental responses, special exceptions, objections,
amended special exceptions, and amended objections. After a hearing, the trial court
granted the motion and signed a judgment on June 13, 2000, notwithstanding its
previous order that the extracontractual claims would be tried after the trial on the
breach-of-contract claim. The judgment expressly stated that all causes of action
were decided in favor of Progressive, except for the breach-of-contract claim. Also
on June 13, 2000, the trial court signed two separate orders: one order sustaining one
of Boyd’s special exceptions


 and denying the remainder of them, and the other order
sustaining two of Boyd’s objections and part of a third objection and overruling the
remainder of his objections.
          Trial on the breach-of-contract claim was held in September 2000. The jury
answered “no” to the following question (question one): “Do you find that there was
an accident between an uninsured motor vehicle and Barry Boyd?”


 On October 12,
2000, the trial court signed a take-nothing judgment in the breach-of-contract case in
favor of Progressive, which judgment incorporated the jury’s answers to all questions.
Appeal
          Boyd timely filed a notice of appeal after the June 13, 2000 summary judgment
and a timely notice of appeal after the October 12, 2000 judgment on the jury verdict.


 
Boyd presents five issues in his appeals: (1) whether the trial court abused its
discretion in severing the extracontractual issues from the breach-of-contract issues
(his fifth issue); (2) whether the trial court erred in disregarding jury questions six and
seven in connection with the judgment in the breach-of-contract case (his fourth
issue); and (3) whether the trial court erred in overruling Boyd’s amended special
exceptions (his first issue) and his objections (his second issue) to Progressive’s
second motion for summary judgment and in granting summary judgment for
Progressive in the case involving his extracontractual claims (his third issue).
Severance
          In his fifth issue, Boyd claims that the trial court abused its discretion in
severing the extracontractual issues from the contract issues. Boyd argues that the
“pretextual (hence ‘bad faith’) investigation conducted by Progressive is the
centerpiece of both the breach of contract and bad faith claims”; therefore, his causes
of action are inextricably interwoven. He also asserts, relying on Liberty National
Fire Insurance Co. v. Akin, 927 S.W.2d 627 (Tex. 1996) (orig. proceeding), that when
a bad-faith claim, such as his, is not limited to claim denial, severance is improper;
therefore, severance of his claims is equivalent to an abuse of discretion. Finally, he
asserts that he was prejudiced in presenting only his breach-of-contract case to the
jury because he was denied the opportunity to present Progressive’s bad-faith actions.
          Rule of Civil Procedure 41 grants the trial court discretion in the matter of
severing causes. Tex. R. Civ. P. 41; Akin, 927 S.W.2d at 629; Guar. Fed. Sav. Bank
v. Horseshoe Operating Co., 793 S.W.2d 652, 658 (Tex. 1990). A trial court’s order
granting a severance will not be reversed except for an abuse of discretion. Guar.
Fed. Sav. Bank, 793 S.W.2d at 658. A claim is properly severable if (1) the
controversy involves more than one cause of action, (2) the severed claim is one that
would be the proper subject of a lawsuit if independently asserted, and (3) the severed
claim is not so interwoven with the remaining action that they involve the same facts
and issues. Id. 
          The controversy between Boyd and Progressive involves more than one cause
of action. Insurance-coverage claims and bad-faith claims are, by their nature,
independent. See Akin, 927 S.W.2d at 629. Although Boyd’s breach-of-contract and
bad-faith claims may be interwoven, Akin indicates that a severance is required in
those bad-faith cases in which the insurer has made a settlement offer on the disputed
contract claim. 927 S.W.2d at 630. In his response to Progressive’s motion to sever,
Boyd conceded that Progressive had tendered settlement offers to him.
          In summary, there is nothing in the record before us that suggests that the trial
court abused its discretion in severing the extracontractual causes of action from the
breach-of-contract cause of action. Accordingly, we overrule Boyd’s fifth issue.
Disregarding Jury’s Answers to Render Take-nothing Judgment
on Breach-of-Contract Claim

          In his fourth issue, Boyd raises his only complaint about the take-nothing
judgment rendered against him on his breach-of-contract claim. He contends that the
trial court erred in disregarding the jury’s answers to questions six and seven in
entering the take-nothing judgment. 
          Question six asked what sum of money, if paid then in cash, would fairly and
reasonably compensate Boyd for the reasonable steps that he took after loss to protect
his damaged property from further loss. The jury answered “$700.00.” Question
seven asked the jury to state in dollars and cents the amount, if any, of attorney’s fees
reasonably and necessarily incurred or to be incurred by Boyd in the lawsuit. The
question also enumerated some of the factors that the jury could consider in
determining the reasonable value of attorney’s fees. The jury answered as follows:
(1) for preparation and trial, $20,000.00; (2) for an appeal to the court of appeals, if
Progressive appealed the judgment, $15,000.00; and (3) for an appeal to the Supreme
Court of Texas, if Progressive appealed the judgment, $10,000.00.
          Question one asked the jury whether there had been an accident between an
uninsured motorist and Boyd. As stated above, the jury answered that question in the
negative. Question two asked whether the negligence of any of the listed parties
caused the accident, but the question was predicated upon an affirmative finding to
question one. Because the jury answered “no” to question one, the jury did not
answer question two. Question three asked for an apportionment of negligence, but
was predicated upon an affirmative finding to question two. Because the jury did not
answer question two, the jury did not answer question three. Boyd raises no
challenge concerning questions one through three or the answers (or lack of answers)
thereto. 
          Questions four through seven were damage issues. None of those questions
was predicated on an affirmative finding to question one or two, and the jury
answered all of the damage questions.


 The jury found $0 for past physical pain and
mental anguish (question four), $5,000 as the difference in the value of the vehicle
immediately before and immediately after the accident (question five), and the dollar
amounts quoted above in response to questions six and seven.
          Boyd’s brief assumes that the trial court disregarded the jury’s answers to
questions six and seven and entered a judgment notwithstanding the verdict on them. 
According to Boyd, he specifically pleaded that Progressive had breached Part E


 of
the insurance contract; his unchallenged pleadings supported his claim for the car-storage fees that he asserted; and, he implies, the jury’s answer to question six
constituted a finding of breach, not only a finding of damage amount. In a similar
vein, concerning attorney’s fees, Boyd argues that his pleadings supported a claim for
attorney’s fees and that the jury’s answer to question seven constituted a finding of
breach, not only a finding of damage amount. 
          Progressive contends that, based on the jury’s negative answer to question one,
the trial court correctly disregarded the jury’s damage findings as an immaterial issue. 
Progressive is correct. When the jury has found no liability, a finding of damages is
immaterial. See Turner v. Lone Star Indus., Inc., 733 S.W.2d 242, 246 (Tex.
App.—Houston [1st Dist.] 1987, writ ref’d n.r.e.); Zak v. Parks, 729 S.W.2d 875, 882
(Tex. App.—Houston [14th Dist.] 1987, no writ); see also S. Pine Lumber Co. v.
Andrade, 124 S.W.2d 334, 335 (Tex. 1939) (concluding that, when jury found
contributory negligence on part of plaintiff, whether jury found plaintiff suffered
substantial damages or failed to answer the issue on damages, issue of damages was
immaterial). Either the jury’s negative finding under question one defeated
Progressive’s obligation under Part E of the insurance contract to pay for reasonable
expenses to protect the covered car or Boyd’s failure to submit a jury question on the
breach of Part E constitutes a waiver of this ground of recovery under Tex. R. Civ.
P. 279.
          Accordingly, we overrule Boyd’s fourth issue.
Issues Relating to the Summary Judgment on the Extracontractual Claims
          In his first three issues, Boyd asserts that the trial court erred in overruling his
special exceptions and objections to, and in granting, Progressive’s second motion
for summary judgment on his extracontractual claims. We follow the usual standards
for reviewing an order granting a motion for summary judgment. See Randall’s Food
Mkts., Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995); Flameout Design &
Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.—Houston [1st Dist.] 1999, no pet.).
Objection to Supplementation of Clerk’s Record
          As a preliminary matter, we must rule on Boyd’s objection, filed in this Court,
to the supplementation of the clerk’s record with the deposition of Castleman.


 
Boyd’s principal objection is that Castleman’s deposition was untimely filed as
summary judgment evidence in the trial court, without leave of court, on the day that
Progressive’s motion for summary judgment was heard. 
          First, there is no evidence in the record that Boyd objected to the trial court’s
consideration of Castleman’s deposition. Second, Boyd relied on Castleman’s
deposition in his supplemental and second supplemental responses to Progressive’s
second motion for summary judgment, and Boyd incorporated the deposition into his
second supplemental response. Accordingly, Boyd’s objection to supplementing the
clerk’s record in this appeal with Castleman’s deposition is overruled.
Special Exceptions or Objections to Progressive’s Summary Judgment Evidence
          In support of its motion for summary judgment, Progressive presented
Castleman’s affidavit and the deposition of its expert, Gamse. Progressive
supplemented this evidence with Castleman’s deposition, to which were attached, as
exhibits, copies of Gamse’s report and the telephone and in-person statements that
Boyd had given to Progressive representatives. Boyd supported his summary
judgment response with copies of the Houston Police Department accident report, his
telephone statements, Progressive’s supplemental answers to his second set of
interrogatories, Progressive’s “internal memos,” Boyd’s affidavit, Progressive’s
objections and answers to Boyd’s interrogatories, Gamse’s report, excerpts from
Gamse’s deposition, and Progressive’s letter of April 23, 1997. As we noted above,
Boyd’s supplemental and second supplemental responses to the summary judgment
motion incorporated Castleman’s deposition.
          Boyd attacks the summary judgment evidence on the following grounds:
●        Various documents were not attached to Progressive’s second
motion for summary judgment (other than those referenced as
Exhibit B in Progressive’s second motion for summary
judgment).
 
●        Although Progressive’s summary judgment motion referred to the
insurance policy, no copy of that policy was attached to the
motion.
 
●        Castleman’s affidavit was vague, conclusory, not readily
controvertible, and self-serving and relied on hearsay and
documents containing specific provisions that were not readily
identified.
 
●        The deposition testimony of Gamse was not competent summary
judgment evidence and was unreliable and not scientifically well
founded under E.I. du Pont de Nemours & Co. v. Robinson, 923
S.W.2d 549, 557-58 (Tex. 1995), and its progeny and contained
hearsay; additionally, Progressive did not specify on which pages
of the deposition Progressive was relying in support of its
summary judgment motion.
 
          We first consider the various documents that Boyd maintains were not attached
to Progressive’s second motion for summary judgment. We have examined the
record, and all of the documents that we have indicated above were presented by the
parties in support of their respective summary judgment motion or response. It is also
clear from the record that the documents were submitted to the trial court before the
summary judgment order was signed and that there was sufficient time for a party to
respond to the documents. Accordingly, we cannot conclude that the trial court erred
when it denied Boyd’s special exceptions on this ground.
          We next consider the insurance policy. We agree that Puga v. Donna Fruit
Co., 634 S.W.2d 677, 680 (Tex. 1982), states that, when provisions of an insurance
policy are material to a movant’s theory, the policy must be attached to the affidavit
that asserts the policy’s existence or otherwise placed of record to provide a basis for
rendition for summary judgment. In Puga, the insurance policy was material to the
issue of the scope of the earlier Industrial Accident Board award. Id. Here, there was
no issue that Progressive was the insurer of Boyd, and the insurance policy was not
material to Progressive’s summary judgment theory on the extracontractual causes of
action. Accordingly, we cannot conclude that the trial court erred when it denied
Boyd’s special exceptions on this ground.
 
          We next consider Boyd’s objections to Castleman’s affidavit. Castleman’s
affidavit, based on his “personal knowledge of the facts and statements contained in
this affidavit,” was one-and-a-half pages long. After the filing of Progressive’s
summary judgment motion (which included Castleman’s affidavit) and Boyd’s
response, Castleman’s deposition was taken. Both parties relied on Castleman’s
deposition in the summary judgment proceeding. In this appeal, Boyd has made no
objection to Castleman’s deposition, other than that we should not allow
supplementation of the clerk’s record with the deposition, which objection we have
already overruled. Castleman’s deposition contains substantially the same
information as set forth in Castleman’s affidavit. Therefore, any error by the trial
court in considering the affidavit, when the deposition was also before it, was
harmless.
          Finally, we consider Gamse’s deposition testimony. Boyd made a global
objection to Gamse’s 1998 deposition as hearsay. Although Boyd recites in his brief
those pages of the deposition containing his hearsay objections, there is no indication
in the record that he requested the trial court to rule on each objection, like the rulings
that were made on the objections to Castleman’s deposition. Accordingly, Boyd has
failed to preserve the hearsay objections on Gamse’s deposition for review. See Tex.
R. App. P. 33.1(a)(2)(A).
          Boyd also contends that Gamse’s opinion testimony was formed without any
significant measurements, scientific analysis, or scientific testing and that the
testimony was completely subjective and not founded on scientific method. Boyd
characterizes Gamse’s conclusions as farcical and nonsensical. Boyd argues that
Gamse’s testimony should be excluded under Robinson and its progeny. According
to Boyd, these alleged defects preclude Progressive’s reliance on Gamse’s opinions.
          Progressive disputes Boyd’s contention about the scientific reliability of
Gamse’s work, but also points out that Progressive was entitled to rely on the opinion
of an independent, objective expert to deny a claim, even if that opinion was later
determined to be wrong. See Lyons v. Millers Cas. Ins. Co., 866 S.W.2d 597, 601
(Tex. 1993) (holding that issue of bad faith focuses on reasonableness of insurer’s
conduct in rejecting claim and holding that there was no evidence that expert reports
were not objectively prepared or that insurer’s reliance thereon was unreasonable). 
Compare State Farm Lloyds v. Nicolau, 951 S.W.2d 444, 448 (Tex. 1997) (holding
that insurer’s reliance on expert’s report, standing alone, will not necessarily shield
carrier if there is evidence that report was not objectively prepared or insurer’s
reliance on report was unreasonable).
          Boyd’s argument seems to be that, in order for Progressive to act in good faith
in denying insurance coverage, Gamse’s report and his testimony in support of the
report must have been reliable and admissible evidence under Rule of Evidence 702
and Robinson. See Tex. R. Evid. 702; Robinson, 923 S.W.2d at 557-58. We know
of no case so holding. Lyons and Nicolau instruct that an insurer’s conduct in
rejecting an insurance claim based on an expert’s report may be reasonable, unless
the report was not objectively prepared or if the insurer’s reliance was unreasonable. 
See Nicolau, 951 S.W.2d at 448; Lyons, 866 S.W.2d at 601. 
          The issue is not the admissibility of Gamse’s report and deposition testimony
under Rule of Evidence 702, as asserted by Boyd. In fact, the report and supporting
deposition testimony had to be considered during the summary judgment proceedings
because Progressive’s summary judgment motion was based on its reliance on
Gamse’s report in making its decision to deny coverage. The real issue is whether
there were material issues of fact about the report’s having been objectively prepared
and the reasonableness of Progressive’s reliance on the report.
          Although Boyd claims that Gamse’s conclusions about Boyd’s falling asleep
at the wheel were “subjective,” that does not mean that Gamse’s report was not
“objective.” “Objectivity” implies that the expert is independent of the party for
whom the report is being prepared, has experience in the area in which he is
investigating, and has no predisposition to a specific conclusion. See, e.g., Nicolau,
951 S.W.2d at 448-49; Lyons, 866 S.W.2d at 599, 601; Parker v. Travelers Indem.
Co., 881 S.W.2d 172, 177 (Tex. App.—Houston [1st Dist.] 1994, no writ). There was
no evidence that Gamse was not independent. Gamse had worked for McDowell
Owens Engineering as a consultant since 1987. Although McDowell and Gamse had
worked for Progressive before, they had also worked for other insurance companies,
corporations, and attorneys. Gamse stated that, at the time that he was hired,
Progressive representatives did not tell him their opinion of how the accident was
caused. Gamse examined Boyd’s damaged car, the accident site, the police accident
report, Boyd’s statements, and the vehicle repair estimate. Gamse had substantial
experience in accident reconstruction. Gamse’s background did not indicate that he
had any predisposition to a particular conclusion about how Boyd’s accident was
caused.
          Boyd did not argue before the trial court, and does not assert in his brief, that
there was a material issue of fact about whether Progressive’s action in relying on
Gamse’s report when it denied Boyd’s insurance coverage was reasonable. Rather,
he expects us to hold that an insurer must first determine if an expert’s report is
reliable and admissible under Robinson before the insurer can reasonably rely on the
report in making a coverage decision. This we decline to do.
          Having reviewed the record and the law, we conclude that the trial court did
not err in failing to exclude Gamse’s report and testimony.
The Merits of the Summary Judgment for Progressive
          1.       Progressive’s summary judgment grounds
          Progressive’s summary judgment motion was brief, consisting of five pages. 
The grounds for summary judgment can be summarized as follows: 
●        For Boyd to recover benefits under the UIM coverage of his
insurance policy, he had to prove that he was struck by a hit-and-run driver. For Boyd to recover on his bad-faith claim, he had to
prove that Progressive knew or should have known that it was
reasonably clear that Boyd’s claim was covered under the policy. 
See Universal Life Ins. Co. v. Giles, 950 S.W.2d 48, 49 (Tex.
1997). Put another way, Boyd had to prove that there were no
facts before Progressive that, if believed, would have justified
denial of his claim. See State Farm Lloyds v. Polasek, 847
S.W.2d 279, 284 (Tex. App.—San Antonio 1992, writ denied);
Higginbotham v. State Farm Mut. Auto. Ins. Co., 103 F.3d 456,
459 (5th Cir. 1997).
 
●        Progressive maintained that it denied Boyd’s insurance claim
based on “various suspect facts” that it discovered during its
investigation and based on the report and investigation of Gamse,
an independent, objective expert. See Lyons, 866 S.W.2d at 601
(holding that no evidence was offered that expert reports were not
objectively prepared or insurer’s reliance on them was
unreasonable). Compare Nicolau, 951 S.W.2d at 448 (holding
that mere fact that insurer relies on expert report to deny claim
does not automatically foreclose bad-faith recovery and that
evidence was presented from which fact finder could have
inferred that reports were not objective and that insurer’s reliance
on reports was merely pretextual). To support its summary
judgment motion, Progressive attached Castleman’s affidavit and
Gamse’s deposition.
 
●        Progressive contended that its summary judgment evidence
established that it did not deny Boyd’s insurance claim until after
his statements had been taken, after his car had been inspected,
after an independent accident reconstructionist had been retained,
after the scene of the accident had been visited, and after Gamse
had made his report.
 
●        Progressive acknowledged that Boyd had asserted
extracontractual claims of Texas Insurance Code violations,
DTPA violations, breach of the duty of good faith and fair
dealing, and “various other common-law tort causes of action.” 
However, Progressive argued that, when extracontractual causes
of action did nothing more than recharacterize a plaintiff’s bad-faith claim, a defense to the bad-faith claim served to defeat the
extracontractual causes of action. See Escajeda v. Cigna Ins. Co.,
934 S.W.2d 402 (Tex. App.—Amarillo 1996, no writ); Emmert v.
Progressive County Mut. Ins. Co., 882 S.W.2d 32 (Tex.
App.—Tyler 1994, writ denied); Polasek, 847 S.W.2d 279.

          It is important to note that, except as indicated above, Progressive’s summary
judgment motion did not expressly address the elements of Boyd’s causes of action
under the Texas Insurance Code, under the DTPA, or for conversion. On appeal,
Progressive responds to Boyd’s issues relating to summary judgment with the same
arguments that Progressive presented below in support of its summary judgment
motion, with the exception of the alternative arguments discussed below.
          2.       Boyd’s summary judgment response
          Boyd answered Progressive’s summary judgment motion by simultaneously
filing a response, special exceptions, and objections. He subsequently filed two
supplemental responses, amended special exceptions, and amended objections. We
consider all of these documents to comprise Boyd’s response to the summary
judgment motion. See McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337,
341 (Tex. 1993) (holding that issues that nonmovant contends avoid movant’s
entitlement to summary judgment must be expressly presented by written answer or
other written response to motion).
          Boyd repeats on appeal the innumerable exceptions, objections, and arguments
that he raised in the trial court. The two most significant attacks that Boyd makes on
the summary judgment motion, and the judgment granted thereon, are that
Progressive failed to address all of his causes of action and that he raised material
issues of fact.
          3.       Progressive’s failure to address all of Boyd’s causes of action
          The general rule is that a court reversibly errs when it grants a motion for
summary judgment on a cause of action not addressed in the motion. Howell v.
Hilton Hotels Corp., 84 S.W.3d 708, 716 (Tex. App.—Houston [1st Dist.] 2002, pet.
denied). Boyd alleged causes of action for breach of the duty of good faith and fair
dealing under the common law, violations of article 21.21 of the Texas Insurance
Code, violations of the DTPA, violations of articles 21.55 and 21.58


 of the Texas
Insurance Code, and conversion.
          Under the duty of good faith and fair dealing, an insurer has a duty to deal
fairly and in good faith with its insured in the processing and payment of claims. 
Arnold v. Nat’l County Mut. Fire Ins. Co., 725 S.W.2d 165, 167 (Tex. 1987). A party
states a cause of action for breach of the duty of good faith and fair dealing by
alleging that there is no reasonable basis for an insurer’s denial of a claim, delay in
payment, or failure to determine whether there is any reasonable basis for denial or
delay. Id. 
          Section three of article 21.21 of the Texas Insurance Code prohibits any person 
from engaging in any trade practices that are defined as unfair or deceptive acts or
practices in the business of insurance. See Tex. Ins. Code Ann. art. 21.21, § 3. 
Section 4(10)(a) defines unfair and deceptive acts in the business of insurance to
include the following: (1) failing to attempt in good faith to effectuate a prompt, fair,
and equitable settlement of a claim with respect to which an insurer’s liability has
become reasonably clear; (2) failing to provide a policyholder promptly with a
reasonable explanation of the basis in the policy in relation to the facts or applicable
law for the insurer’s denial of a claim; and (3) refusing to pay a claim without
conducting a reasonable investigation with respect to the claim. Id., art. 21.21, §
4(10)(a)(ii), (iv), (viii).
          Section 17.46 of the DTPA contains a laundry list of 26 unlawful deceptive
trade practices. See Tex. Bus. & Com. Code Ann. § 17.46(b). Section 17.50(a)(4)
of the DTPA provides that a consumer may bring an action when an act or practice
in violation of article 21.21 of the Texas Insurance Code is a producing cause of
economic damage. Id. § 17.50(a)(4).
          Section 3(a) of article 21.55 of the Texas Insurance Code provides, with
exceptions that do not appear applicable here, that an insurer must notify a claimant
in writing of the acceptance or rejection of a claim not later than the fifteenth business
day after the date that the insurer receives all items, statements, and forms required
by the insurer in order to secure final proof of loss. Tex. Ins. Code Ann. art. 21.55,
§ 3(a). Section 3(c) provides that, if an insurer rejects the claim, the notice required
by section 3(a) must state the reasons for the rejection. Id. § 3(c).
          Conversion is the unauthorized and wrongful assumption and exercise of
control over the personal property of another, to the exclusion of the owner’s rights. 
Automek, Inc. v. Orandy, 105 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2003,
no pet.). A claim for conversion requires a plaintiff to show that (1) he owned, had
legal possession of, or was entitled to possession of the property; (2) the defendant
assumed and exercised dominion and control over the property in an unlawful and
unauthorized manner, to the exclusion of and inconsistent with the plaintiff’s rights;
and (3) the defendant refused the plaintiff’s demand for return of the property. Id. 
          Did Progressive address all of Boyd’s extracontractual causes of action? 
Certainly not expressly or element by element for each cause of action. Although
Progressive acknowledged that Boyd had asserted extracontractual causes of action
besides bad faith, Progressive argued that all such causes of action were defeated, as
a matter of law, because they only recharacterized the bad-faith claim and that a
defense to the bad-faith claim defeated all of the extracontractual causes of action.



          Assuming that Progressive’s argument is generally a correct statement of the
law, that argument cannot apply to the extracontractual causes of action for
conversion or for violation of sections 3(a) and 3(c) of article 21.55 of the Texas
Insurance Code, which claims are not recharacterizations of the bad-faith claim. The
elements of conversion—unlawful and unauthorized control over the property of
another to his exclusion and a refusal to return the other’s property in response to a
demand—as they apply to the storage of Boyd’s car, do not include a bad-faith
element. The requirements of sections 3(a) and 3(c) of article 21.55—that an insurer
notify the insured of a claim denial within 15 days after receipt of the documentation
of proof of loss and that a claim denial must state the reasons for the denial—are not
recharacterizations of the bad-faith claim. 
          We conclude that, to be entitled to summary judgment on all of Boyd’s
extracontractual claims, Progressive was obligated to address all of Boyd’s
extracontractual claims in its second motion for summary judgment and that it did not
do so with respect to conversion and violation of article 21.55 of the Texas Insurance
Code. Accordingly, the trial court erred when it granted summary judgment in favor
of Progressive on Boyd’s causes of action for conversion and violation of article
21.55 of the Texas Insurance Code. To this extent, we sustain, in part, Boyd’s first
through third issues. 
          For the reasons discussed below, it is unnecessary for us to decide whether or
not Progressive successfully addressed Boyd’s causes of action for violations of the
DTPA and article 21.21 of the Texas Insurance Code as recharacterizations of his
bad-faith claim under the common law or whether such causes of action were
defeated as a matter of law under Escajeda v. Cigna Insurance Co., Emmert v.
Progressive County Mutual Insurance Co., and State Farm Lloyds v. Polasek.
          4.       Genuine issues of material fact on the remaining extracontractual
claims

          A bona fide coverage dispute between insurer and insured does not, standing
alone, demonstrate bad faith. See State Farm Fire & Cas. Co. v. Simmons, 963
S.W.2d 42, 44 (Tex. 1998); Nicolau, 951 S.W.2d at 448; Transp. Ins. Co. v. Moriel,
879 S.W.2d 10, 17 (Tex. 1994); see also Giles, 950 S.W.2d at 54 (stating that
standard for recovery must balance remedial purposes of bad-faith tort against
insurer’s right to deny invalid or questionable claims); Lyons, 866 S.W.2d at 600
(holding that, as long as insurer has reasonable basis to deny or to delay payment of
claim, there is no bad-faith tort liability). Evidence of the insurer’s investigation,
including the preparation of an objective, expert report, may demonstrate the
existence of a reasonable basis for denying a claim. See Lyons, 866 S.W.2d at 601. 
However, the mere fact that an insurer relies on an expert’s report will not shield the
insurer if there is evidence that the insurer’s reliance was “merely pretextual.” See
Nicolau, 951 S.W.2d at 448.
          Boyd argues that whether an insurer has breached its duty of good faith and fair
dealing is a question of fact for the jury, not a matter of law for the court. See
Simmons, 963 S.W.2d at 44; Giles, 950 S.W.2d at 49. This is true, provided that the
evidence is legally sufficient to raise a fact issue for the jury or is legally sufficient
to support the jury’s finding. See Simmons, 963 S.W.2d at 44.
          Boyd alleged the following facts to support his causes of action:
 
●        Progressive admitted or confessed that it anticipated litigation on
March 20, 1997,


 the date of the accident.
 
●        Progressive failed to conduct any meaningful investigation before
it anticipated litigation, and its subsequent investigation was not
conducted in good faith.
 
●        Progressive did not have an adjustor look at the car until March
25, 1997, five days after Progressive decided to deny Boyd’s
claim.
 
●        Progressive did not consider employing an accident
reconstructionist until April 10, 1997, 20 days after it had
determined to deny Boyd’s claim.
 
●        Progressive did not send Boyd a letter denying his claim until
April 23, 1997, more than 30 days after Progressive had decided
to deny his claim, and the letter violated article 21.21 of the Texas
Insurance Code.
 
●        The tone of the recorded statements between Boyd and
Progressive’s representatives was accusatory, leading, and not
reasonably conducted and thus demonstrated the prosecutorial
practice of Progressive to search for any pretext to deny his claim,
rather than to conduct a good-faith investigation of that claim.

          With the exception of the last fact alleged, all of Boyd’s facts in support of his
bad-faith causes of action are based on the statement in Progressive’s supplemental
answers to Boyd’s second set of interrogatories that March 20, 1997 (the date of
Boyd’s accident) was the exact date that Progressive determined that the investigation
made the basis of the lawsuit was conducted in anticipation of litigation. Boyd
contends that Progressive could not have conducted its investigation or relied on
Gamse’s report in good faith if Progressive had determined on March 20 that its
investigation was being done in anticipation of litigation.
          In his deposition, Castleman testified that, before he had reviewed the file in
the case or authorized the denial of Boyd’s claim, Gamse was hired to do an accident
reconstruction. Progressive had used Gamse in previous cases, and Castleman stated
that he had talked to his litigation department about the use of Gamse in the past. 
Castleman stated that the Progressive claims representatives had not drawn a
conclusion about whether Boyd’s claim should be denied at the time that Gamse was
hired. However, Castleman did not listen to the statements that Boyd gave or read the
transcriptions before he authorized the denial of Boyd’s claim. Castleman spoke with
the representative of Progressive who took the in-person statement and relied on that
person’s conclusion that Boyd had contradicted himself.
          Boyd’s contradictions were said to include the following:
●        Boyd stated in his telephone statements the day of the accident,
shortly after it happened, that the accident had happened at the
intersection of highways 45 and 288. These highways do not
intersect, and the police report indicated that the accident had
occurred in the 4500 block of 288.
 
●        Boyd stated in his telephone statements that he had no idea who
the other driver was and did not even know if it was a male
driver. He said that the other car just kept on going. In his in-person statement on April 7, 1997, he said that the other driver
was a “fella” and that the other driver stopped, got out of his car,
got back in his car, and then left.
 
●        During the in-person statement, Boyd said that he couldn’t tell
what kind of car was being driven by the other driver because he
was dazed. However, toward the end of the interview, he stated
that his recollection was that the other car was dark colored, but
then said that it was dark outside and that he couldn’t remember.

          Castleman agreed in his deposition that the April 23, 1997 denial letter never
advised Boyd that there were contradictions in his claim information or that the
physical evidence of damage to his car was contrary to his statements. Castleman
stated that he did not know why Progressive representatives anticipated litigation on
March 20, 1997.
          Because Progressive’s interrogatory answer indicated that Progressive
anticipated litigation on the date of Boyd’s accident, because Castleman testified that
he did not listen to or read Boyd’s statements before he authorized denying Boyd’s
claim, and because apparent inconsistencies between Boyd’s telephone statements
and in-person statement may have been the result of a dazed or disoriented state at the
time of the accident, shortly after which the telephone statements were made, we
conclude that there were material issues of fact concerning whether Progressive
conducted its investigation in good faith and relied on Gamse’s report in denying
Boyd’s claim. Therefore, the trial court erred when it granted summary judgment in
favor of Progressive on Boyd’s causes of action for breach of the duty of good faith
and fair dealing under the common law and violations of the DTPA and article 21.21
of the Texas Insurance Code. To this extent, we sustain, in part, Boyd’s first through
third issues.
          5.       Progressive’s alternative grounds for affirmance of the summary
judgment

          Progressive has raised on appeal two alternative grounds for affirming the
summary judgment. The first ground is that the summary judgment rendered on the
extracontractual claims may be affirmed because Boyd did not appeal the judgment
on the breach-of-contract claim.


 According to Progressive, if there has been no
breach of the insurance contract based on the allegedly wrongful denial of a claim,
there can be no bad-faith or extracontractual liability based upon the same denial as
a matter of law. The second ground is that the conversion claim may be affirmed
because Boyd reasserted conversion in his trial pleadings and put on evidence in
support, but failed to submit conversion to the jury, thereby abandoning the claim. 
          We are unable to affirm the summary judgment on the extracontractual claims
based on the subsequent take-nothing judgment in the breach-of-contract case
because this ground was not before the trial court. See Stiles v. Resolution Trust
Corp., 867 S.W.2d 24, 26 (Tex. 1993) (holding that appellate court cannot affirm
summary judgment on grounds not raised in trial court). Nor does “no breach of
contract” necessarily mandate a conclusion of “no bad faith.” See Am. Motorists Ins.
Co. v. Fodge, 63 S.W.3d 801, 804 (Tex. 2001); Akin, 927 S.W.2d at 629; Republic
Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995).
          Neither can we conclude that the judgment in the contract case disposed of the
conversion claim. Before the trial began, the conversion claim had already been
disposed of by the June 13, 2000 summary judgment, which was final, the trial court’s
plenary jurisdiction over the June 13 judgment having expired before the trial began.
          Accordingly, we reject Progressive’s alternative grounds for affirmance.
Conclusion
          We overrule Boyd’s objection to the supplementation of the clerk’s record with
Castleman’s deposition.
          Because we have concluded that the trial court did not abuse its discretion in
severing the extracontractual causes of action from those for breach of contract and
that the court did not err in disregarding the jury’s answers to questions six and seven,
we affirm the take-nothing judgment on the contract cause of action in favor of
Progressive in trial court cause number 689,760, which judgment was signed on
October 12, 2000 (appellate cause number 01-03-01146-CV). 
          However, we conclude that Progressive’s summary judgment motion did not
address all of Boyd’s remaining causes of action and that there existed genuine issues
of material fact with respect to some of the extracontractual causes of action at the
time that the summary judgment was granted. Therefore, we reverse the summary
judgment signed on June 13, 2000 in favor of Progressive on all extracontractual
causes of action in trial court cause number 689,760-101 (appellate cause number 01-00-00785-CV) and remand this cause for further proceedings.



                                                                                  Tim Taft
                                                                                  Justice
 
Panel consists of Justices Taft, Nuchia,


 and Alcala.