J.H. WHITAKER, Appellant,

v.

The BANK OF EL PASO, a/k/a Cielo Vista Bank, et al., Appellees.

No. 08–92–00286–CV.

Court of Appeals of Texas, El Paso.

March 17, 1993.

Dick Stengel, El Paso, for appellant.

Ken Slavin, Brower & Slavin, El Paso, for appellees.

Before KOEHLER, BARAJAS and LARSEN, JJ.

## OPINION

LARSEN, Justice.

This is an appeal from a summary judgment in a conversion case. We find that defendants have established as a matter of law that plaintiff cannot prevail on an essential element of his claim of conversion. We also find that the trial court did not abuse its discretion in refusing to award defendants sanctions under Tex.R.Civ.P. 13, and overrule plaintiff's cross-point on appeal. We affirm the judgment of the trial court.

## STANDARD OF REVIEW

The standard of review of a summary judgment on appeal is

1. The movants for summary judgment have the burden of showing that there is no genuine issue of material fact and that they were entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true; and

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in his favor.

*Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex. 1985). The question before us is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corporation*, 450 S.W.2d 827, 828 (Tex.1970); *Zep Manufacturing Company v. Harthcock*, 824 S.W.2d 654, 658 (Tex.App.—Dallas 1992, n.w.h.). Because it is plaintiff's burden to establish each element of the cause of action, if a defendant submits summary judgment evidence disproving at least one element of the plaintiff's case, then the defendant's summary judgment should be granted. *Bradley v. Quality Service Tank Lines*, 659 S.W.2d 33, 34 (Tex.1983); *Rayos v. Chrysler Credit Corporation*, 683 S.W.2d 546, 547 (Tex.App.—El Paso 1985, no writ).

## FACTS

On November 12, 1991, John H. Whitaker filed a conversion suit against Bank of El Paso, H. Clark Harvey and E. Burt Blacksher (two of the bank's officers), Morgan Drive Away Inc. and Gene and Lily Hoagland. The suit alleged that Mr. Whitaker had purchased eight used mobile homes through his agent O.W. "John" Bowen, which were stored at the Desert Outpost Truck Stop in Hudspeth County, Texas. It also alleged that the bank, through its agents the Hoaglands and Morgan Drive Away, wrongfully took the mobile homes, that Whitaker had demanded their return and defendants had failed to respond. The suit requested actual and punitive damages for conversion.

The record in this case is far from a model of clarity. Indeed, deliberate obfuscation of ownership interests seem to prevail. The eight mobile homes in question may, or may not, have been owned by: (1) Industrial Mobile Space Leasing and Sales Inc.; (2) O.W. "John" Bowen; (3) Bowen's daughter, Darla Elder; (4) John Whitaker; or (5) Bowen Mfg. Housing. The certificates of title are no help in this regard, as they have never been transferred to reflect any sale. For summary judgment purposes, we assume that John Whitaker purchased and owned the eight mobile homes.[1]

The Bank of El Paso took possession of the mobile homes after obtaining a judgment and writ of sequestration following default on a promissory note by Industrial Mobile Space Leasing and Sales, Inc. The judgment and writ of sequestration identify the trailers claimed by Whitaker.[2] The

---

1. We note, however, that Mr. Whitaker's evidence on his ownership of the trailers is extremely irregular. He claims to have purchased the eight mobile homes for cash which he kept in a safety deposit box. He had no documentation of the purchase beyond his own handwritten notes attached to the original titles. He claimed that John Bowen would buy the trailers as his agent, with Whitaker's cash. He never changed the title for any of the trailers. He allowed them to sit in the open desert with broken windows and doors, subject to the elements and frequented by transients, for as long as a year and a half.

This evidence is peculiar indeed, in light of Section 8 of Tex.Rev.Civ.Stat.Ann. art. 5221f (Vernon 1987 and Supp.1993), the Manufactured Housing Standards Act, which makes it unlawful for a buyer of a used mobile home to sell or exchange that home unless a new title is issued by the commissioner of licensing and regulation. A seller of a used mobile home has thirty days from the date of sale to properly complete documents of transfer. Article 5221f, section 8(d) and (e). Penalties for violation of the provisions of this Act include fines of up to $10,000 for each violation and in some cases a conviction of a Class A misdemeanor and assessment of up to $2,000 fine and confinement in the county jail for up to one year. Tex.Rev. Civ.Stat.Ann. art. 5221f, § 17(a) and (b).

2. Gene Hoagland is in business moving mobile homes. He owns a rig, which he leases to Morgan Drive Away for that purpose. His wife, Lily Hoagland, is Morgan's agent in El Paso.

bank had loaned Industrial $40,000 for the purchase of 41 used mobile homes, retaining a security interest in Industrial's business inventory. The mobile homes which Whitaker claims are included in the inventory list which accompanied the loan documents, in the UCC–1 form signed by Industrial and the Bank's representatives, and in the affidavit of Jan Orr, identifying the trailers she sold to John Bowen. Bowen purchased the trailers with a $5,000 wire transfer and a $35,000 cashier's check drawn on the Bank of El Paso. John Bowen's summary judgment affidavit, however, states that Whitaker's mobile homes were never mortgaged to the Bank of El Paso nor did Industrial Mobile Leasing and Sales, Inc. ever have any interest in the mobile homes that belonged to Mr. Whitaker. For summary judgment purposes, we presume Bowen's evidence is true, and we reject all evidence to the contrary. It is undisputed, however, that all the trailers were parked together at the Desert Outpost Truck Stop, and Whitaker's were not physically segregated in any way.

Plaintiff Whitaker cannot establish a fact question as to each of the essential elements of his conversion claim, because defendants have shown, as a matter of law, that plaintiff failed to make demand for the return of the mobile homes at issue. Moreover, defendants never refused to return the homes, and indeed on at least two occasions stated that upon plaintiff's identification of his trailers, and submission of some proof of his ownership claim, they would happily release the property to him.

### ELEMENTS OF CONVERSION

■ Conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another which is to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 446 (Tex.1971); *Beam v. Voss*, 568 S.W.2d 413, 420–21 (Tex.Civ.App.—San Antonio 1978, no writ). Plaintiff must prove that at the time of the conversion, he

was the owner of the property, had legal possession of it or was entitled to possession. *Lone Star Beer, Inc. v. Republic National Bank of Dallas*, 508 S.W.2d 686, 687 (Tex.Civ.App.—Dallas 1974, no writ); *Lone Star Beer, Inc. v. First National Bank of Odessa*, 468 S.W.2d 930, 933–34 (Tex.Civ.App.—El Paso 1971, writ ref'd n.r.e.). Ordinarily, plaintiff must establish that he demanded return of the property, and that the defendant refused to return it. *Hull v. Freedman*, 383 S.W.2d 236, 238 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n.r.e.). Demand and refusal are not necessary, however, when the possessor's acts manifest a clear repudiation of the plaintiff's rights. *Loomis v. Sharp*, 519 S.W.2d 955, 958 (Tex.Civ.App.—Texarkana 1975, writ dism'd). While an absolute refusal to transfer possession to one entitled to it generally constitutes conversion, a qualified good faith refusal based on a reasonable requirement does not constitute conversion. A refusal to deliver property on request may be justified in order to investigate the rights of the parties, and no conversion results if such refusal is made in good faith to resolve a doubtful matter. *Earthman's, Inc. v. Earthman*, 526 S.W.2d 192, 204–06 (Tex.Civ.App.—Houston [1st Dist.] 1975, no writ). The reason for the qualified refusal must be distinctly stated to the party demanding possession, however, or the right to withhold the property is lost. Any reasons for refusing to turn over the property which are not mentioned at the time of the refusal are lost and may not be raised later. *Stein v. Mauricio*, 580 S.W.2d 82, 83 (Tex.Civ.App.—San Antonio 1979, no writ).

### NO DEMAND OR REFUSAL TO RETURN

■ Here, plaintiff's original petition states that "[p]laintiff has made demand for the return of said Mobile homes both of the Bank and Morgan Drive Away but has had no response from either one." In his reply to defendants' motion for summary judgment, however, Whitaker states:

---

Hoagland was hired by the bank to physically move the trailers after the writ of sequestration

issued. He did so. No other allegations are made against these three defendants.

John H. Whitaker, Plaintiff, had no duty to demand return of any mobile homes or anything else that has been converted by anyone, in this instance, by THE BANK OF EL PASO, H. CLARKE HARVEY, E. BURT BLACKSHER, MORGAN DRIVE AWAY, INC., GENE HOAGLAND and LILLY HOAGLAND, Defendants.

John H. Whitaker had no duty to do what THE BANK OF EL PASO had ordered him to do.

Unfortunately for Whitaker, these latter statements are contrary to both his own pleading and the relevant law of conversion. Whitaker was required to raise a fact question on one of two theories: that he either demanded return of the property and defendants refused, or that defendants acted in some way that displayed a clear repudiation of plaintiff's ownership rights. In his petition, he relies only upon the first theory, of demand and refusal. In the interest of justice, however, we will examine the record to determine whether a fact question exists as to either theory. All summary judgment evidence on this issue follows.

Plaintiff testified by deposition that he sent a letter to the bank about the mobile homes, "they chose to ignore it and I figured to hell with them, and I filed the suit." This letter signed by John Whitaker, dated October 22, 1991, and addressed to Bank of El Paso and Morgan Drive Away read in its entirety:

RE: 8 Mobile Homes Parked at Desert Outpost Truck Stop

Gentelmen [sic]:

I had 8 mobile homes stored for repair at the above address. Since, John Bowen, as my agent found and helped bring them here for me.

If you know anything about these homes, please advise me.

Mr. Hoagland of Morgan Drive Away testified at deposition that he never received the letter. Likewise, E. Burt Blacksher, Vice President of Commercial Lending at Bank of El Paso, testified by affidavit that:

THE BANK OF EL PASO never received any written or oral communication directly or through any agent regarding any claim by Plaintiff to ownership of any mobile homes prior to his filing of this lawsuit....

Ken Slavin, attorney for defendants, testified that on November 21, 1991, he sent correspondence to plaintiff which included these inquiries:

Mr. Bob Beck at your [Whitaker's] offices informed me that several 'innocent persons' were claiming that they owned some of the mobile homes which were about to be sold by the Sheriff's Department through execution of the judgment. At that time, I told Mr. Beck that he should have anyone claiming ownership to any of the seized mobile homes to provide me or the El Paso County Sheriff's Department with evidence of ownership. To date, that has not occurred.

The titles you attached to your Original Petition do not show or indicate that you are the owner of any of the listed mobile homes. If you have documentation indicating that you are, in fact, the owner of some mobile homes presently stored at Morgan Drive Away and subject to the El Paso County Sheriff Department's sale in execution, please provide the same. I am sure the El Paso County Sheriff's Department would be happy to release any mobile homes which you claim belong to you upon receipt of such evidence. The Bank of El Paso certainly would not object to such release in the event you have such documentation.

On November 25, 1991, Mr. Slavin sent another letter to Whitaker, which included this statement:

[T]his letter is to confirm our conversation that you have refused to cooperate in the identification of the mobile homes in which you claim an ownership interest.

．　　　．　　　．　　　．　　　．

To date, you have failed and refused to provide any documentary evidence supporting your claim to ownership of the mobile homes listed from him [John Bowen] and otherwise in your lawsuit.

Even viewing this evidence in the light most favorable to plaintiff Whitaker, and

making every reasonable inference in his favor, we simply cannot conclude that there is any genuine issue of material fact as to either a demand for return of the mobile homes and a refusal to do so, or acts which constituted a clear repudiation which would excuse a demand. Whitaker never asked anyone to give him the mobile homes; at most, he asked for information about them. Defendants never refused to give him the mobile homes; at most, they made a reasonable request that he identify those which he claimed and provide some proof of his ownership interest. We find that defendants have proven, as a matter of law, that Whitaker cannot prevail on one of the essential elements of his claim of conversion and that the trial court therefore did not err in granting summary judgment. Plaintiff's sole point of error is overruled.

### RULE 13 SANCTIONS

In a cross-point, defendants urge that the trial court erred in refusing to award attorney's fees and costs as sanctions against plaintiff Whitaker. They urge that they have established their entitlement to such an award as a matter of law, and that Whitaker clearly brought this lawsuit in bad faith, and that his pleadings are rife with statements that are groundless and false.

■ We believe that the decision to award sanctions under Tex.R.Civ.P. 13 is subject to review only for an abuse of the trial court's discretion. *Cooter & Gell v. Hartmarx Corporation*, 496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (rejecting a *de novo* review of trial court's decision to award sanctions under Fed.R.Civ.P. 11); *Home Owners Funding Corporation of America v. Scheppler*, 815 S.W.2d 884 (Tex.App.—Corpus Christi 1991, no writ) (following *Cooter & Gell* in applying abuse of discretion standard under Rule 13); *see also P.N.L., Inc. v. Owens*, 799 S.W.2d 439, 441 (Tex.App.—El Paso 1990, no writ) (assuming an abuse of discretion standard applied in reviewing Rule 13 decision). The trial court is in a much better position to make factual determinations relevant to the imposition of sanctions. We will over-

turn the trial court's ruling, therefore, only when it is based on an erroneous view of the law or a clearly erroneous assessment of the evidence. The trial court does not necessarily abuse its discretion if an appellate judge would decide the matter differently, or if the trial court commits a mere error in judgment. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985); *Scheppler*, 815 S.W.2d at 889.

In reviewing the evidence here, we observe that defendants make a strong argument in favor of sanctions, but we cannot say that the trial court's ruling was arbitrary, unreasonable or without reference to guiding rules or principles. We decline to hold that the trial court abused its discretion. Defendants' cross-point is overruled.

### CONCLUSION

Summary judgment was properly granted in this case. The trial court did not abuse its discretion in refusing to award attorney's fees and costs as sanctions. We affirm the judgment of the trial court.