**AUTOMEK, INC. d/b/a Auto Check # 5, Appellant,**

v.

**Domingo ORANDY and Miguel Saldana, Appellees.**

No. 01–01–00680–CV.

Court of Appeals of Texas, Houston (1st Dist.).

March 13, 2003.

**62**

Debra Catlett, Houston, for appellant.

Enrique C. Ramirez, Houston, for appellee.

Panel consists of Justices HEDGES, JENNINGS, and EVANS.[1]

1. The Honorable Frank G. Evans, retired Chief Justice, Court of Appeals, First District

OPINION

ADELE HEDGES, Justice.

Appellees, Domingo Orandy and Miguel Saldana, brought this action against appellant, Automek, Inc. D/B/A Auto Check # 5, for conversion of a 1987 minivan. The jury found that Auto Check converted the minivan and awarded damages to Saldana in the amount of $3400 and to Orandy in the amount of $1700. Each appellee was also awarded attorney's fees. Auto Check sought a remittitur of the judgment. The trial court reduced Orandy's award to $1000 Auto Check presents seven points of error for our review. We reverse and render judgment for Auto Check.

**Background**

On December 5, 1996, Tracy Muckleroy brought a 1987 minivan to Auto Check No. 5 to be serviced. Muckleroy paid for the services with an insufficient check. Although appellee, Domingo Orandy, was the registered owner of the minivan at that time, he had authorized Muckleroy's possession of the minivan pursuant to a sales agreement. Orandy regained possession of the minivan in January of 1997 after Muckleroy stopped making payments. On March 10, 1997, Orandy sold the minivan and transferred title to appellee, Miguel Saldana. Orandy testified that he sold the minivan in exchange for $100 and satisfaction of a debt he owed to Saldana. However, Saldana left the minivan under Orandy's carport because it had broken windows. Later that day, Gary Golden repossessed the minivan from Orandy's carport. Orandy testified that the telephone number left by the repossession agent belonged to Auto Check No. 5. Orandy then went to Auto Check to inquire into what had happened to his minivan.

of Texas at Houston, participating by assignment.

Orandy was told that the minivan was not at Auto Check and that Auto Check had not authorized its repossession. However, an Auto Check representative called Golden and gave the phone to Orandy. Orandy asked Golden to return the minivan, but Orandy never received it.

## Standard of Review

■ In its first point of error, Auto Check challenges the legal and factual sufficiency of the evidence supporting the jury's finding that it converted the minivan from Orandy and Saldana. In reviewing legal insufficiency points, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding and disregard all evidence and inferences to the contrary. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex.1995). We must uphold the jury's findings when more than a scintilla of evidence exists to support it. *Id.* More than a scintilla exists when the evidence "rises to [a] level that would enable reasonable and fair-minded people to differ in their conclusions." *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex.1994). If we encounter no evidence in support of the finding, we next examine the entire record to see if the opposite position is established as a matter of law. *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989). In reviewing factual sufficiency points, we consider and weigh all the evidence and set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

## Conversion

■ The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, constitutes a conversion. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex.1971). A claim for conversion requires the plaintiff to show that (1) he owned, had legal possession, or was entitled to possession of the property, (2) the defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with the plaintiff's rights, and (3) the defendant refused the plaintiff's demand for return of the property. *Hunt v. Baldwin*, 68 S.W.3d 117, 131 (Tex.App.-Houston [14th Dist.] 2001, no pet.); *Akin v. Santa Clara Land Co., Ltd.*, 34 S.W.3d 334, 344 (Tex.App.-San Antonio 2000, pet. denied).

■ Auto Check challenges the legal and factual sufficiency of the evidence supporting the finding that Orandy proved the first and third elements of a conversion cause of action. Orandy testified that he and the owner of the minivan, Saldana, agreed that Orandy would keep the minivan under his carport. The minivan was under his carport when it was repossessed. Thus, the evidence is legally and factually sufficient to support the jury's finding that Orandy was in legal possession of the minivan.

■ Orandy testified that he went to Auto Check and asked an Auto Check representative where the minivan was located. He also testified that he requested Auto Check to return his minivan. An Auto Check representative told Orandy that Auto Check did not have "any business" with the minivan. Auto Check did not return the minivan. The evidence is legally and factually sufficient to support the finding that Orandy's made a demand for the minivan and that Auto Check refused this demand.

We overrule Auto Check's first point of error as it pertains to Orandy.

In regard to Saldana, Auto Check does not dispute that Saldana held title and had the right to possess the minivan. Instead, Auto Check takes issue with the demand element of Saldana's conversion claim. Specifically, Auto Check argues that there was no evidence to support a finding that (1) Saldana made a demand for return of the minivan and (2) Auto Check's action constituted a clear repudiation of Saldana's rights to the minivan.

The Eighth Court of Appeals's analysis in *Whitaker v. Bank of El Paso* is helpful in determining whether there is any genuine issue of material fact as to either a demand for return of the minivan or acts which constituted a clear repudiation which would excuse a demand. 850 S.W.2d 757, 761 (Tex.App.-El Paso 1993, no pet.). In *Whitaker,* the plaintiff brought a conversion suit against the Bank of El Paso. *Id.* at 759. For summary judgment purposes, the reviewing court assumed that the plaintiff owned eight mobile homes. *Id.* It was undisputed that the Bank had lent Industrial, Inc. money for the purchase of the mobile homes and that the Bank retained a security interest in Industrial's business inventory. *Id.* at 760. The mobile homes owned by the plaintiff were included in this inventory list. *Id.* The Bank took possession of the mobile homes after obtaining a judgment against Industrial and writ of sequestration. *Id.* at 759. The judgment and writ identified the homes claimed by the plaintiff. *Id.* Plaintiff testified that, after the Bank took possession, he sent a letter to the Bank stating that he owned eight mobile homes that had been taken from the relevant address and stating, "If you know anything about these homes, please advise me." *Id.* at 761. The Bank claimed it never received the letter. *Id.* Moreover, the attorney for the Bank testified that he had sent two letters requesting that the plaintiff present evidence of ownership to the Bank or to the sheriff to claim the mobile homes. *Id.* After considering the above-mentioned facts, the court held as follows:

> Even reviewing this evidence in the light most favorable to the plaintiff Whitaker, and making every reasonable inference in his favor, we simply cannot conclude that there is any genuine issue of material fact as to either a demand for return of the mobile homes and a refusal to do so, or acts which constituted a clear repudiation which would excuse a demand. Whitaker never asked anyone to give him the mobile homes; at most he asked for information about them. Defendants never refused to give him the mobile homes; at most they made a reasonable request that he identify those which he claimed and provide some proof of his ownership interest. We find that defendants have proven, as a matter of law, that Whitaker cannot prevail on one of the essential elements of his claim for conversion.

*Id.* at 761–62.

■ In this case, it is undisputed that Saldana did not make a demand for return of the minivan. Saldana testified that he never spoke to anyone at Auto Check, never went to Auto Check to claim the minivan, and never made a demand for return of the minivan. There is no proof in the record that Saldana demanded return of the minivan. Moreover, Auto Check's acts did not constitute a clear repudiation of Saldana's rights to the minivan. *See Id.* at 761–62. Although there is some evidence that Orandy made a demand, this cannot be imputed to Saldana because Orandy, as he testified, was not his agent. Therefore, we hold that the evidence was legally insufficient to support the finding that Auto Check converted Saldana's minivan.

We sustain Auto Check's first point of error as it pertains to Saldana.

### Damages

In its second point of error, Auto Check challenges the legal sufficiency of the evidence supporting the jury's finding that Orandy suffered damages due to the conversion of the minivan. Question number 3 of the jury charge instructed the jury to consider (1) the fair market value of the minivan on March 10, 1997, and (2) loss of use, when calculating the actual damages, if any, suffered by Orandy and Saldana as a result of the conversion. The jury awarded Saldana $3400 in damages and awarded $1700 in damages to Orandy, but it did not specify which measure of damages it applied to calculate the damages suffered by each appellee. Because Saldana had title to the minivan, it can only be inferred that the jury awarded Saldana damages based on the fair market value and awarded Orandy damages for loss of use.

▮ There is no evidence in the record that would support the jury's finding that Orandy suffered any damages due to loss of use of the minivan. Orandy merely testified that his original petition "pray[s] for loss of use damages at the rate of $20 a day from the day of the wrongful possession and conversion." Evidence that Orandy *prayed* for loss of use damages at a certain rate is no evidence that he suffered damages in that amount. Without any evidence, an award for damages for loss of use must be based upon conjecture and is thus impermissible. *First Nat'l Bank of Missouri v. Gittelman*, 788 S.W.2d 165, 170 (Tex.App.-Houston [14th Dist.] 1990, pet. denied). Therefore, the evidence was legally insufficient to find that Orandy suffered loss of use damages.

We sustain Auto Check's second point of error as it pertains to Orandy.

### Conclusion

We sustain Auto Check's first point of error as it pertains to Saldana and its second point of error as it pertains to Orandy. Because our holding disposes of the appeal, we do not address the remaining issues.

We reverse the judgment of the trial court and render judgment that Domingo Orandy and Miguel Saldana take nothing.

Justice EVANS concurring.

FRANK G. EVANS, Justice (Retired), concurring.

I concur in the majority's holding that the trial court's judgment must be reversed and a take-nothing judgment rendered against Orandy and Saldana. But I cannot agree with the reasons given by the majority in support of its decision to render the judgment against Orandy. Specifically, I disagree with the majority's statement that an inference can be gained from the verdict that the jury intended to limit Orandy's monetary award to damages for loss of use of the minivan.

In my opinion, this Court's holding should properly be founded on the undisputed evidence showing that Auto Check held a valid worker's lien claim and thus, had a superior right to possession of the minivan. Accordingly, I would sustain Auto Check's fifth point of error in which it asserts that neither Orandy or Saldana had the status of a bona fide purchaser for value under the provisions of the worker's lien statute. Tex. Prop. Code Ann. § 70.001(b) (Vernon Supp.2003). That statute, in pertinent part, provides:

> If a worker relinquishes possession of a motor vehicle ... in return for a check, ... on which payment is stopped, has been dishonored because of *insufficient funds*, ..., the lien provided by this section continues to exist and the worker is entitled to possession of the vehicle,

... until the amount due is paid, unless the vehicle, ... is possessed by a person who became a bona fide purchaser of the vehicle after a *stop payment* order was made.

(emphasis added).

I agree with Auto Check that neither Orandy or Saldana could have been a bona fide purchaser within the meaning of this statute, because it is undisputed that the check in question was not dishonored because of a "stop payment" order, but rather because of "insufficient funds" in the payor's account.

In my opinion, the language in this statute is clear and unambiguous. Obviously, the legislature could have inserted statutory language extending the bona fide purchaser protection to any person whose check was dishonored for insufficient funds. The legislature chose, however, to limit such protection to persons placing a stop payment order with the bank. In this regard, I think the legislature might have recognized that stop payment orders are frequently issued to maintain the status quo pending resolution of a disputed item.

For the reasons stated, I concur in the holding of the majority.