COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-05-311-CV

 

QUALITY
HARDWOODS, INC.,                                                       APPELLANTS

TIMOTHY MILLS, AND DIANE J.

MILLS



 

   V.

 

MIDWEST HARDWOOD                                                                APPELLEE

CORPORATION

                                              ------------

 

           FROM THE 348TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------      








This is
a restricted appeal from a default judgment entered in favor of Appellee
Midwest Hardwood Corporation.  In two
issues, Appellants Quality Hardwoods, Inc., Timothy Mills, and Diane Mills
(collectively AAppellants@)
contend that error appears on the face of the record because Midwest=s
petition is legally and factually insufficient to support the default judgment
on certain claims against Appellants and that the evidence is legally and
factually insufficient to support all of the damages awarded in the default
judgment by the trial court.[2]  Because we sustain portions of Appellants= first
and second issues, we modify the judgment so that Diane Mills is not
responsible for the attorney=s fees
awarded in the judgment, and we affirm the trial court=s
judgment as modified.

I.  Factual and
Procedural Background








Quality
entered into an agreement with Midwest whereby Midwest paid Quality a sliding
scale commission to resolve a debt that Quality owed to Midwest.  Under the agreement, Quality would warehouse,
sell, and handle Midwest=s inventory in exchange for the
commission.  After operations under the
agreement began, Midwest performed an inventory check and discovered that
several units of hardwood that had been delivered to Quality to warehouse were
missing.  Quality promptly tendered a
check to Midwest to pay for the missing units. 
When Midwest scheduled a second inventory check approximately one year
later, Timothy MillsCQuality=s
registered agentChad to reschedule due to a last
minute conflict.  Immediately before
Midwest performed the rescheduled inventory check four months later, Timothy
Mills advised Mike PomeroyCMidwest=s
representativeCthat he had taken fourteen units
of Midwest=s inventory and had used them to
make cabinets that he had installed in the home that he and his wife Diane
Mills shared.  Timothy Mills signed a pro
forma invoice indicating that he had taken fourteen units of Midwest=s
inventory and acknowledging that he owed Midwest a total of $20,867[3]
for those units.[4]  








After
learning about those fourteen units, and after completing the rescheduled
inventory check, Midwest discovered that approximately $98,000 of the inventory
it had warehoused with Quality was missing. 
Following this inventory check, Timothy Mills as Aproprietor
of Quality Hardwoods, Inc.@ signed
a document titled APhysical Inventory Settlement
Agreement@ admitting that Aany and
all inventory deficit of [Midwest=s]
lumber@ stored
at Quality Ais my responsibility@ and
that he was Alegally and financially liable
to pay Midwest@ Afor any
deficit value of inventory not physically accounted for during the physical
inventory taken on 10-08-04.@  Timothy Mills advised Pomeroy that he had
bills of lading to account for the missing units and that he would forward
those bills of lading to Midwest, but he never did so.  Less than one month later, Midwest removed
all of its inventory from Quality=s
warehouse and re-warehoused it with another company.  After conducting a complete inventory audit
following the move, Midwest discovered that $115,048.45 of its inventory was
missing, including the fourteen units taken by Timothy Mills and used in his
home.  Midwest retained an attorney and
sent Timothy Mills and Quality a demand letter requesting that they either
provide actual bills of lading for the missing units or pay $115,548.45 within
thirty days of the letter=s date.  








When
Timothy Mills and Quality neglected to perform either of the requested actions,
Midwest sued Quality, Timothy Mills, and Diane Mills for conversion, fraud,
breach of fiduciary duty, and breach of contract.  Midwest attached four exhibits to its
petition and incorporated those four exhibits into its petition.[5]  Exhibit A is the pro forma invoice signed by
Timothy Mills acknowledging that he had taken fourteen units and agreeing to
pay Midwest $20,867 for those units. 
Exhibit B is a detailed accounting of unit numbers, unit descriptions,
and costs for all of the missing units. 
Exhibit C is a copy of the physical inventory settlement agreement
executed between ATim Mills C Quality
Hardwoods, Inc.@ and AMike
Pomeroy C Midwest
Hardwood Corp.,@ and an itemization of the
missing inventory is attached.  Exhibit D
is the demand letter sent by Midwest=s
attorney.  

When
Appellants failed to file an answer, Midwest filed a motion for a default
judgment.  The trial court granted a
default judgment for Midwest after a hearing that Appellants failed to attend.  In the default judgment, the trial court
ordered that Midwest recover $115,048.45 as the principal amount due,
prejudgment interest on the principal amount, $6,500 in attorney=s fees,
and postjudgment interest on the total judgment.  The trial court=s
judgment imposed joint and several liability upon Quality, Timothy Mills, and
Diane Mills for the total amount of the judgment.  Appellants timely filed their notice of
restricted appeal. 

II.  Restricted
Appeals and No-Answer Default Judgments








 A restricted appeal is a direct attack on the
trial court=s judgment.  In re E.K.N., 24 S.W.3d 586, 590 (Tex.
App.CFort
Worth 2000, no pet.).  A direct attack on
a judgment by restricted appeal must (1) be brought within six months after the
trial court signs the judgment (2) by a party to the suit (3) who did not
participate in the actual trial and (4) complain of an error that is apparent
from the face of the record.  See Tex. R. App. P. 30; Norman Commc=ns v.
Tex. Eastman Co., 955 S.W.2d 269, 270 (Tex. 1997); E.K.N.,
24 S.W.3d at 590.  The face of the
record, for purposes of reviewing a restricted appeal, consists of all the
papers on file in the appeal, including the reporter=s
record.  Norman Commc'ns, 955
S.W.2d at 270.  Our review thus covers
legal and factual sufficiency claims, including whether the petition
sufficiently alleged causes of action against certain appellants and the amount
of damages awarded.  See id.; Morgan
v. Compugraphic Corp., 675 S.W.2d 729, 731‑32 (Tex. 1984).  Appellants meet the first three requirements
for a restricted appeal; only the fourth requirement is at issueCwhether
Appellants complain of an error that is apparent on the face of the record.








In the
no-answer default judgment context, the failure to file an answer operates as
an admission of the material facts alleged in that petition except as to
unliquidated damages.  Holt Atherton
Indus., Inc. v. Heine, 835 S.W.2d 80, 83 (Tex. 1992).  If the facts set out in the petition allege a
cause of action, a default judgment conclusively establishes the defendant=s
liability.  Morgan, 675 S.W.2d at
731.  Consequently, the defendant against
whom a no-answer default judgment is rendered is precluded from challenging the
sufficiency of the evidence supporting his liability.  See Heine, 835 S.W.2d at 83; Morgan,
675 S.W.2d at 731; Texaco, Inc. v. Phan, 137 S.W.3d 763, 770 (Tex. App.CHouston
[1st Dist.] 2004, no pet.).  Thus, in
reviewing a default judgment, we may not examine the sufficiency of the
evidence to support liability.  See,
e.g., Texaco, Inc., 137 S.W.3d at 763.

 A no-answer default judgment is properly
granted if (1) the plaintiff files a petition that states a cause of action,
(2) the petition invokes the trial court=s
jurisdiction, (3) the petition gives fair notice to the defendant, and (4) the
petition does not disclose any invalidity of the claim on its face.  Id. at 762 (citing Jackson v.
Biotectronics, Inc., 937 S.W.2d 38, 42 (Tex. App.CHouston
[14th Dist.] 1996, no writ)); see also Stoner v. Thompson, 578 S.W.2d
679, 684 (Tex. 1979).  An appellate court
may examine the pleadings to determine whether they sufficiently plead a cause
of action to support the judgment because if no liability exists against the
defaulting defendant as a matter of law on the facts alleged in the petition,
then the fact that he has defaulted by failing to file an answer cannot create
liability.  See First Dallas
Petroleum, Inc. v. Hawkins, 727 S.W.2d 640, 645 (Tex. App.CDallas
1987, no writ).

III. 
Challenges to Midwest=s Petition








In their
first issue, Appellants complain that Aerror
appears on the face of the record for the reason that Appellee=s
petition is legally and factually insufficient to support the liability
judgment.@ 
Specifically, Appellants claim that Midwest=s
petition is legally and factually insufficient because (1) it fails to state a
cause of action for conversion against Diane Mills, (2) it fails to state a
cause of action for breach of contract against Diane Mills, and (3) it fails to
state a cause of action for fraud or breach of fiduciary duty against any of
the Appellants.  As set forth above, by
failing to file an answer, Appellants admitted all facts set forth in Midwest=s
pleading, and may not challenge the sufficiency of the evidence supporting
liability.  See Heine, 835 S.W.2d
at 83; Morgan, 675 S.W.2d at 731; Texaco, Inc., 137 S.W.3d at
770.  Thus, we examine Midwest=s
petition to determine whether it states a cause of action and does not disclose
any invalidity of the claims on its face. 
See Texaco, Inc., 137 S.W.3d at 763. 

A.  Midwest=s Petition States a
Conversion Claim Against Diane Mills

 








In
Appellants= first issue, they contend that
Midwest=s
petition failed to state a conversion claim against Diane Mills.  To state a conversion claim against Diane
Mills, Midwest was required to plead that (1) Midwest owned or had possession
of the property or entitlement to possession; (2) Diane Mills unlawfully and
without authorization assumed and exercised control over the property to the
exclusion of, or inconsistent with, Midwest=s rights
as an owner; (3) Midwest demanded return of the property; and (4) Diane Mills
refused to return the property.  See
Burns v. Rochon, 190 S.W.3d 263, 268 (Tex. App.CHouston
[1st Dist.] 2006, no pet.).  But the
third and fourth elements are not absolute requirements.  See id.; Whitaker v. Bank of El
Paso, 850 S.W.2d 757, 760 (Tex. App.CEl Paso
1993, no writ).  In fact, a demanded
return of the property and subsequent refusal are not necessary when the
circumstances or the convertor=s acts
demonstrate a Aclear repudiation of the owner=s rights
and are tantamount to a refusal after demand.@  Loomis v. Sharp, 519 S.W.2d 955, 958
(Tex. Civ. App.CTexarkana 1975, writ dism=d
w.o.j.) (citing Presley v. Cooper, 284 S.W.2d 138, 141 (Tex. 1955)); see
also Paschal v. Great W. Drilling, Ltd., 215 S.W.3d 437, 457 (Tex. App.CEastland
2006, pet. denied).  

Diane
Mills argues that, although Quality or Timothy may be liable for conversion,
she is not because (1) Midwest made no allegation in its pleadings that she
warehoused or took possession of any property belonging to Midwest, (2) Midwest
made no allegation that she knew Midwest owned the lumber, and (3) Midwest=s
petition fails to state that a demand was made upon her for the return of the
lumber. 








But the
allegations in Midwest=s petition include the factual
allegation that Midwest had Adetermined
that a portion of the 14 units were used by Defendants Timothy S. Mills and
Diane Mills personally to make and install cabinets in their home@
(emphasis added).  Exhibits A and D
incorporated into the petition likewise support this allegation.  Thus, Midwest=s
petition sufficiently named Diane Mills as an individual defendant responsible
for conversion.

And
Diane Mills=s contention that Midwest was
required to plead that she possessed knowledge that the lumber belonged to
Midwest is unfounded.  Complete innocence
and good faith are not elements of or defenses to a conversion claim because
conversion simply requires that the actor possess an intent to assert a right
to the disputed property.  See
White-Sellie=s Jewelry Co.  v. Goodyear Tire & Rubber Co., 477
S.W.2d 658, 662 (Tex. Civ. App.CHouston
[14th Dist.] 1972, no writ); see also Lone Star Ford, Inc. v. Hill, 879
S.W.2d 116, 122 (Tex. App.CHouston
[14th Dist.] 1994, no writ) (holding that conversion can occur even when the
possessor originally acquires the property by lawful means and even in the
absence of wrongful intent).








Diane
Mills=s
contention that Midwest=s pleading is defective because
it fails to indicate that a demand was made upon her for the return of the
lumber is likewise unfounded.  A demand
is not required when the circumstances demonstrate that it would have been
useless.  See, e.g., Bures v. First
Nat=l Bank, 806
S.W.2d 935, 938 (Tex. App.CCorpus
Christi 1991, no writ) (holding that it would have been useless for individual
to send Bank a demand for a certificate of title to a trailer where Bank had
already sent the individual a demand letter requesting that the individual
either surrender the trailer or pay the full amount owed under an agreement
with another party).  Here, the facts set
forth in Midwest=s petition and in the incorporated
exhibits establish that the lumber Diane Mills is alleged to have converted had
already been used to make cabinets and the cabinets had already been installed
in her house; any demand for the return of the lumber would clearly have been
useless.  See id.  Midwest=s
petition sufficiently pleads a conversion claim against Diane Mills.  Accordingly, we overrule that portion of
Appellants= first issue claiming error on
the face of the record exists based on Midwest=s
alleged failure to plead a conversion claim against Diane Mills.

B.     Midwest=s Petition Does Not State a Breach of Contract
Claim

Against Diane Mills; No
Attorney=s Fees Against Diane
Mills

 

In their
first issue Appellants also argue that Midwest=s
petition failed to plead a breach of contract claim against Diane Mills.  To plead a breach of contract claim against
Diane Mills, Midwest was required to plead (1) the existence of a valid
contract, (2) that it performed or tendered performance under the contract, (3)
that Diane Mills breached the contract, and (4) that it suffered damages as a
result of the breach.  See Muenster
Hosp. Dist. v. Carter, 216 S.W.3d 500, 505 (Tex. App.CFort
Worth 2007, no pet.).








Midwest
pleaded the existence of a contract between Timothy Mills, Quality, and
Midwest, but Midwest did not plead that Diane Mills was a party to that
contract with Midwest.  In fact, Midwest=s
petition predicates its breach of contract claim on an agreement entered into
between Midwest and ADefendants Quality and Timothy
S. Mills.@ 
The petition asserts that ADefendants
Quality and Timothy S. Mills, in violation of the agreement to warehouse
[Midwest=s]
property . . . removed a substantial portion of the inventory without informing
[Midwest].@ 
And the petition alleges that A[a]t the
same time the inventory was removed from [D]efendants Quality and Timothy S.
Mills[>s]
possession, Defendant Timothy S. Mills executed a document acknowledging the
deficit and accepting personal responsibility for the monies owed, which is
attached hereto as Exhibit >C= [the
physical inventory settlement agreement].@  Diane Mills=s name
does not appear in the petition in connection with Midwest=s breach
of contract allegations.   

On
appeal, Midwest argues that an implied-in-law contract existed between itself
and Diane Mills, and that it had the right to recover in quantum meruit.  Diane Mills contends that Midwest is
precluded from raising a quantum meruit argument on appeal because it did not
plead such a cause of action in the trial court. 








To
determine whether Midwest=s petition includes this quantum
meruit claim, we examine the petition from the perspective of the person
against whom it is madeCfrom Diane Mills=s
perspective.  See Wilson v. Bloys,
169 S.W.3d 364, 369 (Tex. App.CAustin 2005,
pet. denied).  By reading the petition
alone, Awe must
be able to determine . . . the elements of the cause of action.@  Id. (citing Fairdale Ltd. v.
Sellers, 651 S.W.2d 725, 725 (Tex. 1982)). 


Midwest=s
petition pleaded neither quantum meruit nor any of the elements for a quantum
meruit cause of action against Diane Mills, and the petition sets forth a
breach of contract action solely against Timothy Mills and Quality.  In part of their second issue, Appellants
claim that because Midwest did not plead a cause of action for breach of
contract or quantum meruit against Diane Mills, and because attorney=s fees
are recoverable only under those  causes
of action, Midwest=s pleading will not support an
award of attorney=s fees against Diane Mills.  








Attorney=s fees
are not recoverable in Texas unless such recovery is provided for by statute or
by contract between the parties.  See
Travelers Indem. Co. v. Mayfield, 923 S.W.2d 590, 593 (Tex. 1996).  Generally, attorney=s fees
are not recoverable in conversion cases. 
See Hageman/Fritz, Byrne, Head & Harrison, L.L.P. v. Luth,
150 S.W.3d 617, 627 (Tex. App.CAustin
2004, no pet.).

Here,
Midwest=s
petition requested attorney=s fees
under section 38 of the Texas Civil Practice and Remedies Code, which permits
recovery of reasonable attorney=s fees
if a party is meritorious on a claim for rendered services, performed labor,
furnished material, freight or express overcharges, lost or damaged freight or
express, killed or injured stock, a sworn account, or an oral or written
contract.  See Tex. Civ. Prac. & Rem. Code Ann. ' 38.001
(Vernon 2006).  Because Midwest=s
petition does not state a cause of action against Diane Mills for which section
38.001 permits the recovery of attorney=s fees,
Diane Mills is not responsible for attorney=s
fees.  See, e.g., Green Int=l, Inc.
v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (holding plaintiff not entitled to
attorney=s fees
when it failed to recover damages on breach of contract claim).  Error is apparent on the face of the record
because the judgment imposes joint and several liability on Diane Mills for
attorney=s fees. 

We
therefore sustain that portion of Appellants= second
issue pertaining to the award of attorney=s fees
against Diane Mills and modify the trial court=s
judgment to reflect that only Quality and Timothy Mills are responsible for the
attorney=s fees
awarded in the judgment.  See Tex. R. App. P. 43.2(b).








C.     Midwest=s Petition Does State a
Breach of Contract Claim Against Quality and Timothy Mills For the Total
Damages Awarded, so the Fraud and Breach of Fiduciary Duty Claims Asserted
Against Timothy Mills and Quality Are Immaterial

 

Also in
their first issue, Appellants assert that there is error on the face of the
record because Midwest=s petition fails to state causes
of action for fraud or breach of fiduciary duty against any AppellantCQuality,
Timothy Mills, or Diane Mills.  But
Midwest=s
petition clearly does state a breach contract claim against both Timothy Mills
and Quality.[6]  In fact, as mentioned above, Timothy Mills as
proprietor of Quality signed a physical inventory settlement agreement
admitting that he was legally and financially responsible for any deficit value
of inventory not physically accounted for during the October 8, 2004 inventory
check.  Midwest pleaded and proved that
this amount was approximately $98,000 and that after Midwest moved its
inventory to another location about a month later and conducted a final inventory
check, the missing inventory had a total value of $115,048.45. 








Because
Midwest=s
petition states a breach of contract claim against Timothy Mills and Qaulity
for the total amount of the damages sought, whether  Midwest=s
petition stated alternative, additional causes of action against Timothy Mills
and Quality for fraud and breach of fiduciary duty is immaterial.  See Trusky v. Holoway, No.
14-04-00196-CV, 2005 WL 1150033, at *1 n.3, 4 (Tex. App.CHouston
[14th Dist.] 2005, no pet.) (mem. op.) (holding that court need not address
issues regarding alternative recovery theories where judgment was sustainable
under another recovery theory). 
Accordingly, we overrule that portion of Appellants= first
issue claiming that error exists on the face of the record because Midwest=s
petition allegedly failed to plead a fraud[7]
or breach of fiduciary duty claim against Timothy Mills or Quality.

D.    Midwest=s Petition Does Not State
a Fraud or Breach of Fiduciary Duty Claim Against Diane Mills

 








Also in
their first issue, Appellants argue that Midwest=s
petition fails to plead that Diane Mills ever made a representation, made a
false representation, made a false representation that she knew to be false, or
was a party to the warehousing agreement. 
See Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51
S.W.3d 573, 577 (Tex. 2001) (setting forth elements of fraud claim); Jones
v. Blume, 196 S.W.3d 440, 447 (Tex. AppCDallas
2006, pet. denied) (setting forth elements of breach of fiduciary duty claim);
see also In re M.D.C., 171 S.W.3d 361, 364 (Tex. App.CDallas
2005, no pet.) (holding that breach of fiduciary duty claim requires that a
duty be owed).  Midwest makes no response
to any of these arguments and does not argue that it pleaded causes of action
for fraud or breach of fiduciary duty against Diane Mills.  We have throughly reviewed Midwest=s
petition, and we agree that error is apparent on the face of the record because
Midwest=s
petition does not state a cause of action against Diane Mills for fraud or for
breach of fiduciary duty but the trial court=s
judgment nevertheless contains a finding of fraud by Diane Mills.  We sustain this portion of Appellants= first
issue.  

IV.  Damages

In the
remainder of their second issue, Appellants contend that the evidence is
legally and factually insufficient to support the damages awarded in the
judgment and that the trial court erred by imposing joint and several liability
upon Diane Mills based upon the conversion claim asserted against her.    A.  Midwest=s
Damages Were Liquidated








The
no-answer default judgment presumption that the nonanswering party is deemed to
have admitted all facts properly pleaded does not apply to unliquidated
damages.  Tex. Commerce Bank, N.A. v.
New, 3 S.W.3d 515, 516 (Tex. 1999); Novosad v. Cunningham, 38 S.W.3d
767, 773 (Tex. App.CHouston [14th Dist.] 2001, no
pet.).  A plaintiff alleging unliquidated
damages must present competent evidence that is consistent with the cause of
action pleaded.   Tex. R. Civ. P. 243; Heine, 835 S.W.2d at 83.








But when
the claim involves liquidated damages, a trial court can render a default
judgment if it can verify the damages by referring to the allegations in the
petition and the written instruments.  See
Tex. R. Civ. P. 241; BLS
Limousine Serv.s, Inc. v. Buslease, Inc., 680 S.W.2d 543, 547 (Tex. App.CDallas
1984, writ ref=d n.r.e.).  A claim for damages is liquidated, as opposed
to unliquidated, if the amount of damages can be accurately calculated by the
court from the factual, as opposed to conclusory, allegations in the petition
and an instrument in writing.  See Kao
Holdings, L.P. v. Young, 214 S.W.3d 504, 507 n.2 (Tex. App.CHouston
[14th Dist.] 2006, pet. filed); see also Aavid Thermal Tech. of Tex. v.
Irving ISD, 68 S.W.3d 707, 712 (Tex. App.CDallas
2001, no pet.) (upholding default judgment because amount of damages taxes
could be calculated from appellees=
petitions and attached documentation); Novosad, 38 S.W.3d at 773
(same).  In fact, when a claim is
liquidated and proven by written instrument, the trial court must assess
damages and render final judgment unless the defendant demands and is entitled
to a trial by jury.  See Tex. R. Civ. P. 241.  When written instruments are attached to a
plaintiff=s petition and enable the trial
court to calculate the amount of damages therefrom, the trial court must enter
judgment against a defaulting defendant in the amount of damages reflected in
the pleadings and written instruments.  See,
e.g., First Nat=l Bank of Irving v. Shockley, 663
S.W.2d 685, 688-89 (Tex. App.CCorpus
Christi 1983, no writ). 








Midwest=s claim
for damages here was liquidated because Midwest attached four exhibits to its
petition itemizing in concrete terms the value of each piece of its missing
inventory, three of the exhibitsCExhibits
A, C, and DCfully detailing all of Midwest=s damages,
and one exhibitCExhibit DCindividually
proved all damages and was not contested by Appellants.   Exhibit C contained a report showing that
Midwest stored a total of $187,295 of its inventory at Quality=s
warehouse.  The report showed that
Midwest gave Appellants three credits to that total amount: (1) a $65,407
credit for inventory it located in Quality=s
warehouse, (2) an $11,440 credit for inventory yet to be billed to customers,
and (3) a $20,867 credit for inventory purchased by Quality.  That left a total of $89,581 in unaccounted
for or missing inventory.  The $20,867 credit was a credit given for the
fourteen missing units admittedly used in Timothy and Diane Mills=s home,
but never paid for.  Exhibit C contained
a second report showing the value of Aunlocated
units used by Quality@ as $20,867.  That report also shows that the Aunlocated
units used by Quality@ had the same unit numbers
attributed to the units taken and used in the home of Timothy and Diane
Mills.  The $20,867 credit given in
Exhibit C=s previous report was therefore
a credit given for the fourteen units that Timothy and Diane Mills used in
their home but failed to pay Midwest for. 
Accordingly, the damages could be accurately calculated from the written
instruments to include the previously credited $20,867.

Exhibit
C also contained a third report, which involved the $11,440 credit given for
the inventory yet to be billed to the customer. 
Midwest argues that Appellants should not have received $6,371 of that
credit because Hoffman Cabinet=s, Inc.Cone of
the customers receiving the inventory identified in the $11,440 creditCdisputed
$6,371 worth of that inventory.  Exhibit
D to the petition demonstrates the same, explaining that Midwest is seeking
$115,548.45, including Athe disputed amount by Hoffman
Cabinet=s, Inc.@ in the Aamount
of $6,371.00.@ 
Midwest therefore argues that Appellants were only entitled to a credit
of $5,069.  Accordingly, the damages
could be accurately calculated from the written instruments to include $6,371
of the previously credited $11,440.








Because
the trial court Ashall@ render
judgment in the amount of liquidated damages accurately calculated through
written instruments attached to the petition, and because that total is
$116,819[8]
here (the $89,581 total of unaccounted for or missing inventory, plus the
$20,867 credit previously given for the fourteen units used by Timothy and
Diane Mills in their home, plus $6,371 of the $11,440 credit given for
inventory yet to be billed to customers), the trial court did not have to hear
evidence as to damages and Appellants may not challenge the legal or factual
sufficiency of the evidence to support these liquidated damages.  See Tex.
R. Civ. P. 241, 243; See also
McCluskey v. State, 64 S.W.3d 621, 624 (Tex. App.CHouston
[1st Dist.] 2001, no pet.) (refusing to address Appellant=s
sufficiency challenges when damages were liquidated).  We overrule that portion of Appellants= second
issue.

B.  Joint and Several Liability Against Diane
Mills for Conversion








In its
third and final subpoint within its second issue, Appellants argue that there
is error on the face of the record because the trial court=s
judgment should not have imposed joint and several liability on Diane Mills in
light of the fact that the only pleaded cause of action asserted against her
was for conversion and that the conversion damages were divisible.  But as we have discussed, in a no‑answer
default context, judgment can be entered on the pleadings alone, and all facts
properly pleaded are deemed admitted.  Morgan,
675 S.W.2d at 732.

Here, as
we have previously discussed, Midwest pleaded a conversion claim against Diane
Mills.  Under the pleaded conversion
claim, Midwest did not limit its pleaded conversion damages to $20,087; Midwest
alleged that the damages it suffered from the conversion were in the amount of
$115,048.45.[9]  This amount constituted liquidated damages,
as set forth above, and the trial court properly rendered a default judgment
for damages in the pleaded amount based on the damages alleged in Midwest=s
petition and on the documents attached to and incorporated into the
petition.  See Tex. R. Civ. P. 241; Novosad, 38
S.W.3d at 773 (ACunningham=s
liquidated damages were properly proved to the trial court by Cunningham=s
written instruments and by Novosad=s
admission [by default] of the material facts in Cunningham=s
original petition.@); see also BLS Limousine
Serv.s, Inc., 680 S.W.2d at 547.








Appellants
argue that although joint and several liability may be imposed when the actions
of two or more entities or individuals join to produce an indivisible injury,
joint and several liability may not be imposed when the injuries can be
apportioned with reasonable certainty.  See
Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 654 (Tex. 1996).  Appellants argue that the damages imposed for
the conversion claim against Diane Mills may be apportioned with reasonable
certainty because the amount converted by Diane Mills is delineated in the
record as $20,867.  But the Amstadt
case relied upon by Appellants is not a no-answer default judgment situation in
which all pleaded material facts are admitted by the defaulting party.  For the reasons set forth above, we overrule
that portion of Appellants= second
issue pertaining to Diane Mills=s joint
and several liability.

V.  Conclusion

Having
sustained portions of Appellants= first
and second issues, we modify the trial court=s
judgment to reflect that no fraud finding exists against Diane Mills and to
reflect that Diane Mills is not jointly and severally liable for the attorney=s fees
awarded to Appellees in the judgment. 
Specifically, we modify the third paragraph of the judgment, item number
2 to provide that AA finding of Fraud against the
defendants Quality Hardwoods, Inc., and Timothy Mills,@ and we
add an item number 7 providing that ADiane
Mills, individually, is not responsible for payment of the attorney=s fees
awarded herein.@   Having overruled the remaining portions of
Appellants= first and second issues, we
affirm the trial court=s judgment as modified.            








                

                SUE WALKER

                JUSTICE

 

PANEL B: LIVINGSTON,
WALKER, and MCCOY, JJ. 

 

DELIVERED: June 28, 2007











[1]See Tex. R. App. P. 47.4.





[2]Because some of the
arguments that Appellants make under their first and second issues are intertwined,
we address them together in places throughout this opinion.





[3]Quality seems to argue
that the value of these fourteen units was $22,386.86; but Midwest seemingly
concedes and the record supports that the value of these units was actually
$20,867.00.  Consequently, we use the
lower number in this opinion.





[4]On the following day,
Quality tendered a check, signed by Timothy Mills, to Midwest for
$10,982.45.  The bank returned the check
due to Quality=s insufficient funds (ANSF@).  A copy of this check, stamped NSF is attached
to Midwest=s pleading as part of
Exhibit C.  





[5]Quality argues that
Exhibits A and C were not incorporated into Midwest=s petition.  But all four exhibits, including A and C,
were incorporated into Midwest=s petition because copies were attached to the
petition and the petition references the exhibits.  See Tex.
R. Civ. P. 59.  





[6]In their appellate brief,
Appellants do not argue that Midwest=s petition does not state a breach of contract
claim against Timothy Mills and Quality; they assert only that the petition
fails to state a breach of contract claim against Diane Mills.





[7]We note, however, that
Midwest=s petition sufficiently
alleged all of the necessary elements of and facts supporting Midwest=s fraud claim against
Timothy Mills and Quality.  See
Texaco, Inc., 137 S.W.3d at 769 n.3 (holding that plaintiff sufficiently
pleaded fraud claim by alleging that defendant made  false representations of material fact with
knowledge of their falsity or recklessly without any knowledge of their truth).





[8]Although the damages
total exceeds the $115,048.45 awarded in the judgment, Midwest consistently
pleaded for damages of only $115,048.45, and that is what the trial court
awarded.  A trial court may not render
judgment for an amount in excess of the damages plaintiff requested in his or
her last pleading.  See Kinder
Morgan N. Tex. Pipeline, L.P. v. Justiss, 202 S.W.3d 427, 442 n.7 (Tex.
App.CTexarkana 2006, no pet.).





[9]Specifically, Midwest
pleaded that A[t]he fair market value
of the property in Tarrant County, Texas, at the time of its conversion was
$115,048.45, including the hardwoods converted by Defendants Timothy S. Mills
and Diane Mills for use in their home.@